MEMPHIS BANK AND TRUST COMPANY, Appellant,

v.

Charles L. WALKER, Appellee.

No. 81–2073.

United States District Court,
W. D. Tennessee, W. D.

June 17, 1981.

Allen Gardner, Memphis, Tenn., for appellant.

Irving S. Zeitlin, Memphis, Tenn., for appellee.

## MEMORANDUM OPINION

WELLFORD, District Judge.

This case is an appeal from an Order of the Bankruptcy Court, Honorable David S. Kennedy, with regard to a Chapter 13 "Wage Earner" proceeding. Appellant bank has challenged the Bankruptcy Court's finding as to the value of an automobile in which the bank held a security interest, and also the Court's allowance of a 10% interest rate on the bank's secured claim.

■ Appellant's first contention on appeal is that the Bankruptcy Court erred in determining that the value of the debtor's automobile, in which the bank held a security interest, was $4,900.00. The 1979 Chevrolet Monte Carlo was purchased for a cash price of $7,340.14 and the deferred payment price amounted to $10,901.12 in May of 1979. In the debtor's October 3, 1980 Chapter 13 plan, the estimated value of the car was stated as $4,500. (No basis of such value estimation was indicated). The bank objected to the proposed plan, estimating instead the value of the car to be $5,808.76, the same amount of its remaining secured claim. At a hearing on the bank's objection to the plan, J. T. Holloway, Vice President of the bank, testified that the value of the automobile was $5,150.00. This figure was based upon the recent 1980 Tennessee Edition of the "Blue Book," an automobile dealers' guide to value, which was made an exhibit to Mr. Holloway's testimony. Debtor's counsel maintained that the value of the car was $4,500.00, based upon the Southeastern Edition of the N.A.D.A. guide, the value reflected in the debtor's proposal.

Holloway's testimony was the only testimony offered on the issue of value, but he was not established to be an expert on valuation of used cars, nor had he ever examined the specific automobile in question. Holloway's estimated value of $5,150.00 was the "Black Book" price for an "extra clean" car. ("Clean," "average" and "rough" cars were valued by the Book at $4,960, $4,385 and $3,800, respectively). The Bankruptcy Court determined the value of the car to be $4,900.00 based upon the amount which could be realized at a "commercially reasonable" sale.

The standard of value applied by the Bankruptcy Court appears to be correct. *In re Pennyrich International, Inc. of Dallas v. Abramson*, 473 F.2d 417 (5th Cir. 1973).[1] Under the evidence presented, this Court is not prepared to find that the Bankruptcy Court's valuation of the car at $4,900 was "clearly erroneous." There was no "expert" opinion nor even one submitted by one who had examined the car. The Bankruptcy Court's finding on this issue is, therefore, affirmed.

■ The other contention is that the Bankruptcy Court erred in allowing the bank to collect only 10% interest on its secured claim. The bank contends rather that it should have been allowed to collect interest at the rate provided for in the initial sales contract between the parties (15.98%). The bank is clearly entitled to receive a "time-value differential" in this case under 11 U.S.C. § 1325(a)(5)(B)(ii), particularly since it will not receive the value of its secured claim immediately, nor even within the time contemplated in the contract. The statute does not specify how the Court should determine the rate of interest to be applied.

While the Court's primary concern here is not with giving the bank the benefit of its bargain, it should consider all the equities present in the record, bearing in mind that the bank's secured interest has been diminished and it must await payment under the deferred payment scheme incorporated in the plan. Equity may require a forward-

1. The standard there was "the norm that a prudent businessman would employ to dispose of an asset."

looking analysis, a reasoned appraisal of interest rates and economic conditions as well as the view with the benefit of hindsight urged by appellants. It is apparent that an interest rate set by contract over two years ago for many months has been less than the prime interest rate applicable in the marketplace. It is reasonable to protect the creditor's reduced secured claim for the coming fifty-four months considering the equities present and the debtor's posture and ability to make payment. The Bankruptcy Court recognized the difficulty encountered in setting an interest rate during these uncertain times. In setting a 10% interest rate, the Bankruptcy Court acknowledged that this was less than the minimum prime rate then recently experienced. He reached the result another Tennessee bankruptcy judge determined in *In re Lum*, 1 B.R. 186, 188 (E.D.Tenn.1979).

Since mid-1979 the *prime* rate of interest has been at a *minimum*, approximately twelve per cent.[2] The contract rate in this case is about the average of the prime rate of interest since mid-1979, to the present time. The Court takes judicial knowledge of this fact from the *Federal Reserve Bulletin*, a monthly publication of the Board of Governors of the Federal Reserve Bank (Table 1.33). The rate established in *In re Lum* in 1979 is simply inadequate and unreasonable in 1980 and 1981 if the debtor can reasonably pay on a deferred basis the agreed contract rate in light of the equities.

What are the equitable circumstances in this case to be considered and taken into account? According to the filing, the debtor earned $23,000 the last calendar year before filing (1979); his "take home" pay in 1980 was estimated at $1,000 per month. The debtor was separated, and no information was shown as to the wife's status of employment; his estimated future monthly expenses, $445, were shown to be less than one-half of his estimated take home pay

(excluding payments on a home mortgage the installment amount reflected to be $1 per installment).[3]

The total of other secured claims outstanding was reflected to be $625 (excluding the bank's claim and the home mortgage). The total of unsecured debts was $366, excluding any Memphis Bank and Trust amount. (The claim register reflected a total of claims filed and allowed, exclusive of the bank and mortgage company's claims, to be $1126, as of January, 1981.) The debtor listed assets of over $3,000, besides his car, on the bankruptcy schedule as of October 1, 1980.

The monthly installments due on the automobile contract (a 1979 Chevrolet Monte Carlo) were $202 a month over 48 months, at an annual percentage interest rate of 15.98%. The Bankruptcy plan rate was approved at $128 per month at 10% per annum on the $4,900 secured value; the unsecured portion was to be paid over fifty-four months without interest.

Under all the circumstances here evident, the Court approves the $4,900 secured value determination, but monthly payments thereon will be made at the agreed 15.98% interest rate. The debtor is responsible to bear this interest rate from the onset of this plan. The matter is remanded to the Bankruptcy Court to implement this Order and the change of interest rate herein determined as equitable in this case for the reasons indicated based on the facts of this particular bankruptcy matter. If monthly payments have to be increased to carry out this Order, the manner and amount will be determined by the Bankruptcy Judge promptly.

---

2. In May, June and July, 1979, it was about 11½%; in July, 1980, it was the same; in August, 1980, it dropped to a little over 11%. In *all* other months it substantially exceeded 12%. In a number of months it has exceeded 19% since 1979.

3. The debtor quit claimed his interest in the homeplace incident to divorce proceedings on which there was a mortgage debt of some $27,-850.