In re William N. PETRY and Mary V. Petry, Debtors.

Bankruptcy No. 87–80177.

United States Bankruptcy Court, C.D. Illinois.

April 9, 1987.

Charles E. Covey, Peoria, Ill., for debtors.

James S. Dixon, Peoria, Ill., for Norwest Financial.

## OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

Prior to filing their present Chapter 13 proceeding, the Debtors had filed a Chapter 7 proceeding and received a discharge from their debts. At the time of their Chapter 7 filing, Norwest Financial of Illinois, Inc. (NORWEST) held a second mortgage on the Debtors' residence as security for a $20,000.00 debt. The Debtors made some payments on the mortgage and then filed their Chapter 13 proceeding. Their Chapter 13 plan proposes to pay their unse- cured creditors, with the exception of NOR- WEST, 100% of their claims. The plan proposes to pay NORWEST only as a se- cured creditor in an amount equal to the Debtors' equity in their residence over and above a first mortgage and real estate tax- es for the years 1984, 1985, and 1986. The amount to be paid to NORWEST is less than the total debt owed to NORWEST. The plan does not propose to pay NOR- WEST anything on the unsecured portion of NORWEST's claim because the Debtors contend that portion of the claim was dis- charged by the prior Chapter 7 bankruptcy.

NORWEST objected to the Chapter 13 plan on two grounds. First, the Debtors have a greater equity in their residence and that equity should be used to satisfy NOR- WEST's second mortgage. Second, after the Chapter 7 proceeding was filed the Debtors reaffirmed the debt to NORWEST and therefore NORWEST should be treat- ed the same as other unsecured creditors and it should be paid 100% on the unse- cured portion of its claim.

■ The first issue for this Court's de- termination is the value of the Debtors' residence. The Debtors had two expert appraisers testify the value of their resi- dence was $45,000.00. These appraisers made a thorough inspection of the interior and exterior of the residence. Both ap- praisers adjusted its value downward be- cause of a lack of what is commonly known in the real estate business as "street ap- peal" and because of the need for interior improvements. NORWEST's appraiser testified the residence was worth approxi- mately $55,000 to $60,000.00. However, his appraisal was made by what is known as a "drive by" without visiting the inside of the residence. Approximately sixteen months earlier NORWEST's appraiser had appraised the residence for another pur- pose and found it to have a value of $47,- 000.00. Considering all of the testimony, this Court finds the Debtors' appraisals were more thoroughly completed and accu- rately reflect the value of the residence in the amount of $45,000.00.

The Debtors and NORWEST have agreed the first mortgage balance is $36,744.52. After deducting the first mortgage balance from the value of the residence, the Debtors' equity in the residence is $8,255.48. The next issue is whether that equity should be reduced to recognize the Debtors' obligation to pay their 1984 and 1985 real estate taxes ($3,714.15) and their 1986 real estate taxes ($1,460.00). If these tax obligations are deducted from the Debtors' equity, NORWEST's secured claim would be $3,081.33. If these taxes are not deducted from the Debtors' equity, then NORWEST's secured claim would be $8,255.48.

■ Section 506 of the Bankruptcy Code provides as follows:

"(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

In determining the value of a secured creditor's lien on property, the court should look to the reason for the valuation and the contemplated use of the property. Generally, if the Debtors are going to continue to use the subject property, the principal purpose of the valuation will be to define the extent of the protection or benefits to be afforded the secured creditor to protect or compensate that creditor for depriving it of immediate access to the property to recover on its claim. The valuation will generally seek to determine the price which would be received by the secured creditor upon a hypothetical disposition of the property. 3 *Collier on Bankruptcy*, para. 506.04(2). In the context of a Chapter 13 plan, a Chapter 13 plan, a Chapter 13 debtor should pay to the secured creditor the amount the secured creditor would receive if he had gained possession and sold the property. *In re Cook*, 38 B.R. 870 (Bkrtcy. D.Utah 1984). *See*, also, *Chrysler Credit Corp. v. VanNort (In re VanNort)*, 9 B.R. 218, 221 (Bkrtcy.E.D.Mich.1981). In the case before this Court the 1984 and 1985 taxes are liens on the Debtors' residence. Although the 1986 taxes, which are payable in 1987, are not yet payable, they, too, are liens upon the Debtors' residence. If NORWEST were to take possession of the property and sell it, NORWEST would have to either satisfy these liens or give the purchasers credit against the purchase price. Either way, the amount NORWEST would receive from a disposition of the residence would be reduced by the amount of these taxes. Therefore, this Court finds that for the purpose of determining the amount of NORWEST's secured claim, the amount of the 1984, 1985, and 1986 taxes should be deducted from the Debtors' equity.

■ The final issue for this Court's determination is whether the Debtors, after the filing of the Chapter 7 proceeding, reaffirmed the debt to NORWEST. If they did, then the unsecured portion of NORWEST's claim should be treated in a manner similar to that received by other unsecured creditors. Following the 341 meeting in the Chapter 7 proceeding the Debtors and their attorney met with the attorney for NORWEST and indicated they wanted to keep the house and to continue to make payments. Thereafter, the Debtors did make a conscious effort to make the mortgage payments due to NORWEST. For approximately six months one of the Debtors' employer made the payments and then for approximately seven months the Debtors made the payments. These payments were made without any written reaffirmation agreement. Section 524 of the Bankruptcy Code as applicable at the time of the Chapter 7 proceeding, did not require a written reaffirmation agreement. However, Section 524 did require the Bankruptcy Court to conduct a hearing and admonish the debtor that such an agreement was not required and the legal effects and consequences of such agreement and default of such an agreement. *See, In re*

*Roth,* 43 B.R. 484 (N.D.Ill.1984). There is nothing in the Chapter 7 proceeding file which indicates that such admonitions were given to the Debtors. Furthermore, the Debtors testified that they attended only the 341 meeting and did not attend any subsequent hearing where the reaffirmation admonishments were given. Therefore, this Court finds the debt to NORWEST was discharged by the Chapter 7 proceeding and the discharged debt was not validly reaffirmed.

Therefore, this Court holds that NORWEST's objection to the Debtors' Chapter 13 plan should be denied, and directs the Debtors' attorney to prepare and submit an order confirming the Chapter 13 plan, treating the debt to NORWEST as secured in the amount of $3,081.33.