**In re Francis L. MALODY and Jill E. Malody, Debtors.**

**VALLEY NATIONAL BANK OF ARIZONA, Appellant,**

v.

**Francis L. MALODY and Jill E. Malody, Appellees.**

**BAP No. AZ–88–2108–RJP.**

**Bankruptcy No. 88–1036 PHX GBN.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 22, 1989.

Decided Aug. 21, 1989.

Patricia Doyle–Kossick, Rawlins, Burrus, Lewkowitz & Feinstein, Phoenix, Ariz., for appellant.

Russell A. Brown, Hugh E. Haffner, Chandler, Ariz., for appellees.

Before RUSSELL, JONES and PERRIS, Bankruptcy Judges.

RUSSELL, Bankruptcy Judge:

## OPINION

Creditor objected to the debtors' Chapter 13 plan on the ground that it undervalues the creditor's secured claim in two vehicles. A valuation hearing was held and the bankruptcy court ruled that the creditor's secured claims in the vehicles should be valued according to their wholesale values. We affirm.

## FACTS

Francis L. Malody and Jill E. Malody (debtors) took out two loans from Valley National Bank of Arizona ("VNB") (appellant) in order to purchase two automobiles. On February 13, 1985, the debtors entered into a monthly installment note and security agreement whereby VNB loaned them the principal sum of $9,738.19 and perfected a security interest in a 1985 Ford Tempo. On August 8, 1986, the debtors entered into a purchase money security agreement whereby VNB loaned them the principal sum of $18,383.34 and perfected a security interest in a 1986 Ford Bronco II.

On February 10, 1988, the debtors filed both their Chapter 13 petition and their Chapter 13 plan ("Plan"). At the time of the petition, the debtors owed VNB the principal balance of $6,457.75 for the Tempo and $15,902.10 for the Bronco. The debtors have been in default on the Tempo's monthly payments of $229.11 since January 25, 1988, and on the Bronco's monthly payments of $406.23 since January 22, 1988.

The debtors' Plan provides that the value of VNB's secured claim in the Tempo is $3,800 and the value of VNB's secured claim in the Bronco is $9,000. Both claims accrue interest at the rate of 10% per annum. On March 11, 1988, VNB filed its objection to the debtors' Plan on the ground that the Plan undervalues both of VNB's secured claims. In its objection, VNB argued that the Plan failed to meet the statutory requirements of 11 U.S.C. Section 1325 because the value of the property to be distributed under the Plan on account of VNB's two secured claims was less than the allowed amount of the two claims. *See* 11 U.S.C. § 1325(a)(5)(B)(ii). Specifically, VNB asserted that the vehicles, as collateral, should be valued in light of their proposed disposition or use, and thus the value to the debtors of retaining and using the vehicles.

A valuation hearing was scheduled for November 2, 1988. Prior to the hearing, the parties filed a joint pretrial statement stipulating the Tempo's wholesale value to be $2,600 and its retail/replacement value to be $4,800, and the Bronco's wholesale value to be $9,300 and its retail/replacement value to be $12,000. The parties further stipulated that the bankruptcy court conduct the valuation hearing as an oral argument regarding the proper standard to be used in this Chapter 13 case. The parties requested that the court focus its attention on 11 U.S.C. Section 506(a) in order to determine whether the proper measure of value should be the collateral in the hands of the creditor or the replacement cost of the collateral to the debtors.

VNB filed its legal memorandum regarding valuation on October 28, 1988, and argued that the bankruptcy court must look to the proposed disposition or use of the

collateral in a Chapter 13 case. It argued that if the vehicles are to be retained by the debtors, then they should be valued in light of such retention. This value, VNB argued, is the cost to the debtors to replace the vehicles. Alternatively, VNB argued that the court should look to the "going concern" value of the vehicles since their retention adds to the estate by assisting in the effectuation of the debtors' Plan.

The debtors filed their legal memorandum regarding valuation on November 1, 1988. They argued that the collateral should be valued at the amount which a creditor would receive upon regaining possession of and liquidating the collateral.

The bankruptcy court heard oral arguments regarding valuation of the vehicles in the Plan on November 2, 1988. The court ruled that, in this case, VNB's "secured claims shall be valued according to its interest in the vehicles in the stipulated wholesale amounts." Such amounts generally constitute what VNB would receive from a commercially reasonable sale of the vehicles, rather than the cost to the debtors to replace the vehicles. An order to such effect was entered on November 22, 1988. VNB timely filed its Notice of Appeal on December 2, 1988.

## ISSUE

Whether the bankruptcy court erred when it ruled that the value of VNB's secured claims in the vehicles under Section 506(a) was the stipulated wholesale amounts, or what VNB would receive from selling the vehicles in a commercially reasonable manner, rather than the debtors' replacement cost of the vehicles.

## STANDARD OF REVIEW

■ This appeal involves the application of 11 U.S.C. Section 506 in valuing automobiles under a Chapter 13 plan. The interpretation of a statute is reviewed *de novo*. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986); *In re Tompkins*, 95 B.R. 722, 723 (9th Cir. BAP 1989).

## DISCUSSION

■ Bankruptcy Code Section 1325 sets forth the requirements to be satisfied in order for a Chapter 13 plan to be confirmed. In this appeal, we are asked to determine whether the "cram down" provisions of section 1325(a)(5)(B) have been satisfied. Subsection (a)(5)(B) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;....

The parties agree that VNB retained its lien securing its allowed secured claim pursuant to Section 1325(a)(5)(B)(i). The problem arises in determining whether "value" has been provided pursuant to Section 1325(a)(5)(B)(ii). In making such a determination, we are asked to focus on the amount of the allowed secured claim because, under this subsection, the value of property to be distributed under the plan cannot be less than the amount of the allowed secured claim.

The amount of the allowed secured claim is determined in accordance with the provisions of Section 506. Section 506(a) provides, in pertinent part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Thus, Section 506(a) bifurcates an undersecured creditor's claim into two parts: a claim is secured to the extent of the value of the creditor's interest in the collateral; and it is unsecured for the balance of the claim.

Legislative history helps clarify Section 506(a). The Senate Report indicates that "[w]hile courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property." S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5845. Similarly, the House Report states that " '[v]alue' does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine on a case-by-case basis, taking into account the facts of each case and the competing interests in the case." H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5854, and 6312.

Courts have not consistently applied these concepts in the context of secured claims on automobiles held by financial institutions when a debtor proposes to retain and use the vehicles. For purposes of setting the allowed amounts of secured claims in a Chapter 13 plan, value has been determined on the following bases: (1) wholesale value (*see In re Smith*, 42 B.R. 198, 200 (Bankr.N.D.Ga.1984); *In re Cook*, 38 B.R. 870, 875 (Bankr.D.Utah 1984)); (2) retail replacement cost (*see Matter of Reynolds*, 17 B.R. 489, 493 (Bankr.N.D.Ga.1981)); and (3) various combinations of the two, including the average between wholesale and retail value. *See* 3 *Collier on Bankruptcy* ¶ 506.04[2], at 506–36 to –37 (15th ed. 1989). Such valuations have been made in light of the facts and evidence presented regarding the purpose and disposition or use of the vehicles in each particular case, and no

clear cut formula or benchmark of value exists.

In the instant case, both parties vigorously attempt to persuade this Panel that its interpretation of Section 506(a) is the correct one. VNB asserts that because the second sentence of section 506(a) specifically states that "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property," the value of the vehicles should be determined based on their retention and use by the debtors. To support its position, VNB relies heavily on *In re Courtright*, 57 B.R. 495, 497 (Bankr.D.Or.1986), and *In re Sprecher*, 65 B.R. 598, 600–01 (Bankr.C.D.Ill.1986), for its position that the value of the vehicles should be the cost to the debtors to replace the collateral.

VNB further asserts that since the debtors are retaining the vehicles under the Plan, the use of liquidation values is inappropriate because retention enables the debtors to avoid the necessity of replacement transportation and enhances the prospects of the debtors' rehabilitation. Additionally, VNB contends that the retention of the vehicles pursuant to a Chapter 13 plan connotes a going concern value which should be measured by the retail replacement cost of the vehicles. *See Reynolds*, 17 B.R. at 493. Finally, VNB asserts that even if the collateral is valued in the "hands of the creditor," and not in the "hands of the debtor," that a commercially reasonable resale value should be applied, which would be a greater value than a forced sale or liquidation value.[1]

The debtors, in response, contend that they are not arguing for a forced sale valuation of VNB's interest in the vehicles. Rather, they contend that VNB's proposal of the replacement valuation standard is inconsistent with the spirit and intent of the Bankruptcy Code. They assert that the second sentence of Section 506(a) merely refers to the purpose and timing of

---

**1.** The only values presented to the bankruptcy court by the parties were the wholesale/liquidation and the retail/replacement values. Although VNB argues that it *might* have disposed of the vehicles other than by wholesaling them, it presented no evidence of this "possibility." We decline to "split the baby" by using the median value between the wholesale and retail values.

valuation, and is not a reference to valuing a debtor's interest in collateral retained under a Chapter 13 plan. *See In re Claeys,* 81 B.R. 985, 992 (Bankr.D.N.D. 1987).

The debtors further argue that VNB erroneously relies on the language "proposed disposition or use" contained in Section 506(a) in its contention that the replacement cost is the proper method of valuing the debtors' interest in the retained collateral. Specifically, the debtors argue that VNB's reliance on *Courtright* and *Sprecher* is erroneous due to the legislative history of Section 506(a) and, in particular, the fact that the collateral in those cases was land around which both plans revolved. The debtors assert that the instant case is distinguishable from *Courtright* and *Sprecher* because in those cases the debtors retained land for the purpose of producing income under the plans. Here, they assert, the retention of the vehicles is incidental to their ability to produce income under their Plan. Thus, the debtors contend that the replacement cost method of valuation of the vehicles is inappropriate and that the court properly determined that the values should be measured according to the stipulated wholesale amounts.

The bankruptcy court held that, in this case, the vehicles should be valued in the debtors' Plan according to their stipulated wholesale values rather than their replacement values. We agree with this determination. First, we recognize the well-reasoned view that the purpose of valuation under Section 1325(a)(5)(B)(ii) is not to assure that a secured claimant under the plan will receive as much money as the debtors would be required to spend to replace the vehicles. Rather, the purpose is to protect a secured claimant from loss by assuring that it will receive as much money under the plan as it would receive if it were permitted to sell the vehicles in a commercially reasonable manner. The replacement cost is not an appropriate standard. *In re Cook,* 38 B.R. 870, 873 (D. Utah 1984). *See In re Petry,* 76 B.R. 651, 653 (Bankr.C.D.Ill.1987). *See also Memphis Bank & Trust Co. v. Walker,* 14 B.R. 264, 265 (W.D.Tenn.1981); *In re Klein,* 10 B.R. 657, 660 (Bankr.E.D.N.Y.1981); *Matter of Van Nort,* 9 B.R. 218, 220–21 (Bankr.E.D. Mich.1981).

Second, as discussed *supra,* although the replacement value of certain types of collateral may be the appropriate measure in certain instances, it is not the most appropriate measure in other instances. *See* 3 *Collier on Bankruptcy* ¶ 506.04[2], at 506–36 to –37 (15th ed. 1989). For example, in *Courtright* and *Sprecher, supra,* the collateral in question was farm land which was necessary for the planting of crops from which the debtors were to generate income under their plans of reorganization. Those courts held that the replacement value was the proper means of valuing the collateral because the land was essential to the effectuation of the debtors' plans. *See Courtright,* 57 B.R. at 497; *Sprecher,* 65 B.R. at 601.

In the instant case, however, the vehicles are not essential to the effectuation of the debtors' Plan. Although the debtors use their vehicles for transportation to and from work, the vehicles are not the source of the debtors' livelihood. As pointed out by the bankruptcy court, alternative forms of transportation exist and the vehicles "can be replaced by something as mundane as the city bus." Thus, it is not the use of the car that generates income for a Chapter 13 debtor who uses the car to drive to and from work. Rather, it is the services of the debtor unrelated to the use of the car, that generates income. *Cook,* 38 B.R. at 875 n. 11.

Third, as indicated by the bankruptcy court, the replacement value enunciated by VNB ignores the inherent risk which VNB, as a lender, undertook when it made these loans—the risk that if the debtors defaulted VNB might have to repossess the vehicles and sell them at values most likely less than their retail values.

A vehicle owned by a debtor has a greatly enhanced value to the debtor simply because of that debtor's economic circumstances. Since most Chapter 13 debtors already have financial difficulties and poor credit records, it would be extremely diffi-

cult, if not impossible, for them to replace their vehicles. At the same time, in the instant case, it is clear that the debtors' repossessed vehicles would be sold at wholesale rather that at retail. Since the Code encourages Chapter 13 cases, it would be unfair and unwise in the instant case to award VNB a premium and penalize these Chapter 13 debtors.

Finally, we agree with and adopt the following language regarding the purpose of Section 1325(a)(5) when analyzed in conjunction with Section 506(a):

> Most often in a consumer case, a secured creditor has a security interest in property that is virtually worthless to anyone but the debtor. The creditor obtains a security interest in all of the debtor's furniture, clothes, cooking utensils, and other personal effects. These items have little or no resale value. They do, however, have a high replacement cost. The mere threat of repossession operates as pressure on the debtor to pay the secured creditor more than he would receive were he actually to repossess and sell the goods.

*Cook*, 38 B.R. at 873 (quoting H.R.Rep. 595, 95th Cong., 1st Sess. 124 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 6085).

> The valuation provisions of [this] legislation were meant to remedy this problem by requiring Chapter 13 debtors to pay as a secured claim only the amount the secured creditor would receive upon repossession and sale of the collateral. The remaining balance of the claim would be paid along with other unsecured claims. Thus, Section 506(a), at least in this context, is intended to place a value on the collateral equal to its value *to the creditor* .... A rule requiring valuations under Section 1325(a)(5)(B) to measure the replacement cost of collateral to the debtors would defeat the design of Congress by giving secured creditors leverage they were not meant to have.

*Cook*, 38 B.R. at 873–74 (emphasis in original).

## CONCLUSION

We hold that the bankruptcy court did not err when it determined that the value of the debtors' vehicles should be the value in the hands of the creditor, i.e., the stipulated wholesale values and not their replacement values. Such a determination is based solely on the facts in this appeal in accordance with the policies of Sections 506(a) and 1325(a)(5) of the Code. The decision of the bankruptcy court is AFFIRMED.