In re Charles Hiram USRY, Sr. SSN: 259–68–8034 Debtor.

Charles Hiram USRY, Sr., Movant,

v.

UNITED STATES SMALL BUSINESS ADMINISTRATION and United States Farmers' Home Administration, Respondents.

In re James W. WELLS, a/k/a Jimmy Wells, SSN: 255–56–3189 Debtor.

James W. WELLS, Movant,

v.

UNITED STATES FARMERS' HOME ADMINISTRATION, Respondent.

In re Julian F. COSBY, Jr., SSN: 253–90–2186 Debtor.

Julian F. COSBY, Jr., Movant,

v.

UNITED STATES FARMERS' HOME ADMINISTRATION, Respondent.

In re James Edward CARSON, SSN: 252–60–1841 Debtor.

James Edward CARSON, Movant,

v.

UNITED STATES FARMERS' HOME ADMINISTRATION, Respondent.

Bankruptcy Nos. 89–10289–ALB, 89–10381–ALB, 89–282–ALB and 89–10295–ALB.

United States Bankruptcy Court, M.D. Georgia, Albany Division.

Oct. 16, 1989.

Ben F. Easterlin, IV, Americus, Ga., for movants.

Lillian H. Lockary, Asst. U.S. Atty., Macon, Ga., for respondents.

MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On August 18, 1989, a hearing was held on the Debtors' Motion for Determination of Secured Status. In each case, the Debtors and the respective Respondents have stipulated and entered into consent orders as to the fair market value of the real property under consideration. At the conclusion of the hearing, the issue before this court was whether the amount of the allowed secured claim of a creditor is an amount equal to the fair market value of the creditor's interest in its collateral, or whether it is the fair market value reduced by the cost of converting the collateral to cash. The court invited all parties to submit briefs on the above issue. This court, having considered the arguments and briefs of counsel, now renders this Memorandum Opinion.

As a starting point on valuation, § 506(a) of the Bankruptcy Code provides as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C.A. § 506(a) (West 1979).

The Debtors' position is that in determining the secured status, one must start with the fair market value of the collateral involved and then reduce the fair market value to its net recovery value. There is a split of authority on this question of valuation and cases may be found on either side of the issue.

The Debtors contend that fair market value is based on the premise that the collateral will be sold in a commercially reasonably manner over time, so as to bring the highest possible sale as opposed to a forced sale where the collateral will be disposed of by quick sale which will bring a lesser price. In support of their position, the Debtors cite to the court the case of *Matter of American Kitchen Foods, Inc.,* 2 Collier Bankr.Cas.2d (MB) 715 (Bankr.D. Me.1976). The court in *American Kitchen Foods, Inc.* stated:

Where the collateral consists of personal property, its conversion value is the net amount recoverable from a sale or other disposition conducted in a commercially reasonable manner pursuant to UCC Secs. 9–504(3) & 9–507(2); in the case of real estate collateral, it is the net

amount recoverable in a mortgage foreclosure sale.

It is misleading to describe the disposition of collateral as a "liquidation," except in the sense that it may accomplish a conversion of the collateral from a illiquid to a liquid state. "Liquidation" value in a collateral conversion context is not necessarily equatable with "forced sale" value; ... (Footnotes omitted.)

*Id.* at 720.

Other courts have considered this issue and have concentrated their analysis on the valuation of the creditor's interest in the collateral as the basis of the valuation rather than the value of the collateral. In *In re Boring,* 91 B.R. 791, 795 (Bankr.S.D. Ohio 1988), the court stated:

Most courts recognize that the debtor's proposed retention and use of collateral does not emasculate the fact that it is in the first instant the *creditor's interest* in the collateral that must be valued. Hence in valuing a creditor's interest in property, bankruptcy courts attempt to determine what the creditor could recover if the collateral were disposed of in a commercially reasonable manner. (Footnotes omitted.)

*See also In re Paige,* 13 B.R. 713 (Bankr.S. D.Ohio 1981).

In *Matter of Parr,* 30 B.R. 276 (Bankr.N. D.Ala.1983), the court's analysis of the valuation issue was that "the cost of sales must be subtracted in order to determine the value of the bank's interest in the property. 'The distinction to be drawn is between the value of the property and the value of the creditor's interest in such property....'" *Id.* at 277 (quoting *In re Ward,* 13 B.R. 710, 712 (Bankr.S.D.Ohio 1981)). *See also In re Frost,* 47 B.R. 961 (D.Kan.1985); *In re Klein,* 10 B.R. 657 (Bankr.E.D.N.Y.1981); *In re Jones,* 5 B.R. 736 (Bankr.E.D.Va.1980).

However, this court is persuaded by the other line of cases which emphasize the language of § 506(a) of the Bankruptcy Code [1] in that the analysis should be made in light of the Debtor's intended use of the

---

1. 11 U.S.C.A. § 506(a) (West 1979).

collateral. The court in *In re Bellman Farms, Inc.,* 86 B.R. 1016 (Bankr.D.S.D. 1988) noted that "if the debtor remains in possession of the collateral, these hypothetical costs [of liquidation] should not be deducted from the collateral." *Id.* at 1019 (Citing 11 U.S.C.A. § 506(a) "value should be determined in light of the purpose of the valuation and of the proposed disposition or use of such property ...").

Likewise the court in *In re Courtright,* 57 B.R. 495 (Bankr.D.Ore.1986) concluded:

> [W]here the debtors intend to retain and use the property, it is appropriate that the amount in which the secured claim should be allowed is the fair market value of the property without reduction for the costs of foreclosure and resale, or, in other words, what it would cost the debtors to replace the property.

*Id.* at 497. *See also In re Penz,* 102 B.R. 826 (Bankr.E.D.Okla.1989); *In re Fursaman Ranch,* 38 B.R. 907 (Bankr.W.D.Mo. 1984); *In re Cohen,* 13 B.R. 350, 353 (Bankr.E.D.N.Y.1982).

The *Courtright* court analyzed the language of § 506(a) of the Bankruptcy Code[2] and noted that "if the underlined portion [of § 506(a) of the Bankruptcy Code] were interpreted to mean that the value must be fixed at the amount which the creditor would receive on foreclosure, then the last sentence of the statute which provides that the value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of the property, would be surplusage." *Courtright,* 57 B.R. at 497. This court agrees with the analysis of the *Courtright* court and concludes that § 506(a) of the Bankruptcy Code[3] is clear on its face without any ambiguity as to how the courts should consider valuation in regard to the proposed disposition or use of the property at issue.

Similarly in *Matter of Cooper,* 7 B.R. 537, 540 (Bankr.N.D.Ga.1980), the court concluded that the creditor's interest in the estate's interest must be decided upon the proposed disposition or use of such property. The *Cooper* court noted that "[a] claimant under Section 506(a) may not be allowed a claim in an amount greater than the market value of the collateral as determined in relation to the proposed actual use of such property by the creditor or debtor."

In *In re Malody,* 102 B.R. 745 (Bankr. 9th Cir.1989), a recent decision from the Ninth Circuit BAP, the court analyzed valuation in a Chapter 13 context where the retention of the collateral was incidental to the debtor's ability to produce income under the plan. The *Malody* court analyzed § 506(a) of the Bankruptcy Code[4] in connection with § 1325(a)(5) of the Bankruptcy Code[5] and noted:

> The valuation provisions of [this] legislation were meant to remedy this problem by requiring Chapter 13 debtors to pay as a secured claim only the amount the secured creditor would receive upon repossession and sale of the collateral. The remaining balance of the claim would be paid along with other unsecured claims. Thus, Section 506(a), at least in this context, is intended to place a value on the collateral equal to its value *to the creditor....* A rule requiring valuations under § 1325(a)(5)(B) to measure the replacement cost of collateral to the debtors would defeat the design of Congress by giving secured creditors leverage they were not meant to have.

*Id.* at 750 (quoting *In re Cook,* 38 B.R. 870, 873–74 (D.Utah 1984)).

The *Malody* court further concluded that the purpose of valuation under § 1325(a)(5)(B)(ii) of the Bankruptcy Code[6] is not to assure that the secured claimant will receive its replacement value of the collateral, but only to protect the secured claimant from loss by assuring that the secured claimant will receive as much for the collateral as it would if it were permit-

---

**2.** 11 U.S.C.A. § 506(a) (West 1979).

**3.** 11 U.S.C.A. § 506(a) (West 1979).

**4.** 11 U.S.C.A. § 506(a) (West 1979).

**5.** 11 U.S.C.A. § 1325(a)(5) (West 1979 & Supp. 1989).

**6.** 11 U.S.C.A. § 1325(a)(5)(B)(ii) (West 1979 & Supp.1989).

ted to sell the collateral in a commercially reasonable manner.

Therefore, in light of the fact that in the cases at issue, the Chapter 11 and Chapter 12 Debtors plan to retain and utilize the Respondents' security property to produce income, the court determines that the amount of each Respondent's secured claim is the amount of the stipulated fair market value without deduction for the cost of liquidation.