**In re Doris D. COBY, Debtor.**

**Bankruptcy No. BK–S–87–2615–LBR.**

United States Bankruptcy Court,
D. Nevada.

Jan. 26, 1990.

Mark Segal, Las Vegas, Nev., for debtor.

David Sorensen, IRS Dist. Counsel, Las Vegas, Nev., for respondent.

## MEMORANDUM DECISION AND ORDER

LINDA B. RIEGLE, Bankruptcy Judge.

Doris Coby filed a chapter 13 bankruptcy petition on September 24, 1987. The Internal Revenue Service (IRS) filed a proof of claim for back taxes in the amount of $36,959 secured by a lien on the debtor's residence. The debtor objected to the claim arguing, inter alia, that for purposes of providing for the claim under 11 U.S.C. § 1325(a)(5), the "allowed secured claim" as defined by 11 U.S.C. § 506(a) must be computed by deducting the hypothetical costs of sale.[1] The debtor is employed in the gaming industry and there is no indication that any income is derived or to be derived from the use or occupancy of the home.

After the parties had briefed the issue but before argument was heard, the Bankruptcy Appellate Panel for the Ninth Circuit decided *In re Malody*, 102 B.R. 745 (9th Cir. BAP 1989). This Court then directed the parties to file additional briefs as to the effect of that decision on the issue raised in this case.

### Issue

Whether the hypothetical costs of sale must be deducted in determining the "allowed secured claim" of the IRS in the debtor's residence, notwithstanding the debtor's retention of the home pursuant to a Chapter 13 plan.

### Discussion

Section 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or sue of such property, and in conjunction with any hearing on such disposition or sue or on a plan affecting such creditor's interest.

Although Congress intended that value would be "determine[d] on a case-by-case basis [with the Court] taking into account the facts of each case and the competing interests in the case," H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6312, courts have wrestled with the interplay between the two sentences of Section 506. One of the twists to this problem is whether or not hypothetical costs of liquidating the asset should be ignored. While the courts have been split, *See, e.g., Wolk v. Goldome Realty Credit Corp. (In re 222 Liberty Associates)*, 105 B.R. 798 (Bankr. E.D.Pa.1989); *In re Foster*, 79 B.R. 906 (Bankr.D.Mont.1987); *cf In re Cook*, 38 B.R. 870 (Bankr.D.Utah 1984); *In re Smith*, 92 B.R. 287 (Bankr.S.D.Ohio E.D. 1988); and cases cited therein, this court believes that the issue has been resolved in this circuit by the decision in *Malody*.

In that case the Panel held that the wholesale, and not the retail/replacement value, is the appropriate value to be used in determining the value of the secured claim in an automobile under Section 506. The IRS argues that *Malody* is distinguishable; however, an analysis of the court's decision demonstrates that the same principle is applicable in this case such that the costs of liquidating the real property must be considered in calculating the value of the IRS's claim.

Focusing on the second sentence of § 506(a), the creditor in *Malody* argued that because the debtor was retaining the

---

1. While the debtor made other objections, these objections were resolved or abandoned.

vehicle, then "the use of liquidation values is inappropriate because retention enables the debtors to avoid the necessity of replacement transportation and enhances the prospects of the debtors' rehabilitation." The creditor also argued that retention implies the going concern value and hence the retail/replacement value.

A notable element of the appellate panel's decision was the fact that it distinguished property retained by the debtor which was necessary for the completion of the plan, see, e.g., In re Courtright, 57 B.R. 495 (Bankr.D.Or.1986), from property which was merely incidental to the plan. Malody at 749. The panel concluded that if the property was incidental to the plan, then the replacement value is not the appropriate measure to the value of the collateral. Having dealt with the meaning of the second sentence of § 506(a) in this context, the court concluded that the appropriate value is the value of the property in the creditor's hands, i.e., how much would the creditor receive upon liquidation.

The IRS cites several cases in support of its position that use of the fair market value, without any deduction for hypothetical costs of sale, is the appropriate valuation method. However, all of the cases cited are non-bankruptcy cases which address valuation issues for purposes other than § 506(a) of the Bankruptcy Code. These cases ignore the tension present in the Bankruptcy Code between the debtor's interest and the creditor's interest in an asset. Also, the hypothetical costs of sale issue was never even an issue in these cases. In its Supplemental Authorities, the IRS cites two Pennsylvania district court cases which disallow the deduction of hypothetical costs of sale. However, these two cases, and any other cases with a similar holding, are not directly binding authority on this court. Furthermore, they contradict the binding authority of Malody. Mal-

ody does address the tension between the debtor and creditor's interest in an asset, and decides, for chapter 13 purposes, the interest to the creditor should prevail when the debtor retains the use of an asset not essential to the effectuation of the plan.

In the case under submission the debtor seeks to deduct the costs of liquidating her residence from its fair market value to properly reflect the value of that asset to the IRS. As in Malody, the debtor's (Coby) residence is not the source of her income. Her occupation is listed as a "21" dealer, not an occupation which can be run out of a home. Thus the residence is not essential to effectuate the plan.[2]

Accordingly, as it is the creditor's interest in the asset which is used for valuation purposes, such hypothetical costs should be deducted and the debtor's objection sustained.

IT IS SO ORDERED.

---

**2.** The IRS has alleged that deduction of hypothetical costs are speculative. While such might be the case with respect to a consensual lienholder (such as a seller who retains a deed of trust) who would thus have the option of acquiring the property in his own name and remaining in the property or selling it by private means, the IRS clearly does not have that op-

tion. See 26 U.S.C. § 6335 (1986). In any case the actual amount of costs to be deducted would be determined on a case by case basis depending upon the circumstances. It is the Court's understanding that the parties have stipulated that if costs are to be deducted, 10% is an appropriate rate to use in determining costs of sale.