**In re Reinard A. SPACEK, Debtor.**

**Bankruptcy No. 88–13513FM.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

March 26, 1990.

Mitchell R. Bearden, Bearden & Johnson, P.C., Austin, Tex., for debtor.

Allan I. Schneider, Schneider, Krugler & Kleinschmidt, Giddings, Tex., for creditor.

## MEMORANDUM OPINION

FRANK R. MONROE, Bankruptcy Judge.

A contested hearing was held on March 13, 1990, concerning the value of the surface and mineral estates of this Debtor in a 172.479 acre tract of land out of the J.Y. Wallace League Abstract 22, and the Claiborne Lawrence League Abstract 189, approximately 14 miles north of Giddings, Lee County, Texas (the "Property"). The purpose of the valuation is for use in the Debtor's Plan of Reorganization in which the Debtor proposes retaining the Property and paying the secured creditor the value of its secured interest.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and (d) and the standing Order of Reference in this District. Further, pursuant to 28 U.S.C. § 157(b)(2)(B) this matter is a core proceeding.

*Method of Valuation*

Section 506(a) of the Bankruptcy Code allows this Court to determine the value of the secured creditor's interest in this estate's interest in the Property. This estate owns fee simple title to the Property. The lender, First National Bank of Giddings, ("Bank") has a first deed of trust lien upon the Property as well as a security interest in all income produced from the Property. A valuation under § 506(a) must be made in light of the purpose of the valuation and the proposed disposition or use of the Property, and in conjunction with any hearing on such disposition or use or on a plan affecting the creditor's interest. 11 U.S.C. § 506(a). Such is the case here as the valuation is in conjunction with the Debtor's Plan which seeks to retain full ownership of the Property and pay to Bank the full value of its interest in the Debtor's interest in the Property.

Recent Fifth Circuit cases such as *Sandy Ridge Development Corporation v. Louisiana National Bank*, 881 F.2d 1346 (1989) are not of significant assistance in the instant case as it provides no guidance as to the manner of valuation to use in any particular situation. That is clearly left to the Courts to develop on a case-by-case basis.

Recently, this Court in its opinion in *In re Robert E. Peerman*, 109 B.R. 718 (Bankr.W.D.Tex.1989), cited with favor the opinion of Judge Lief Clark in *In re Raylin Development Co.*, Vol. III, Issue 6, *The Texas Bankruptcy Court Reporter*, 490 (Nov. 1989) for the proper manner of valuing real property when it is being returned to a creditor under a plan. Since the Property was going back to the creditor, the appropriate procedure was to value the Property in the creditor's hands. The Court felt it appropriate to require the secured creditor to give a credit upon its claim to the bankruptcy estate roughly equal to what it would have been able to receive through disposition of the collateral in the most commercially reasonable manner practical under the circumstances. *In re American Kitchen Foods, Inc.*, 2 B.C.D. 715 (Bankr.D.Me.1976). In *Raylin*, Judge

Clark determined the most commercially reasonable manner for the secured lender to dispose of the property was for it to act as developer. This was also found appropriate by this Court in *Peerman* partially upon the reasoning that unsecured creditors, and therefore the estate as well, "have a right to expect, to count on, and to benefit from prudent disposition by undersecured creditors of their collateral." *In re Raylin Co.*, supra at 492. What is important to this case is that both *Peerman* and *Raylin* stand for the proposition that valuation is to be made on a case-by-case basis; to-wit, even though the secured creditors got their collateral back, liquidation value was not found to be the appropriate valuation standard due to the particular facts and circumstances of those particular cases. Also, in both cases since the property was being returned, the courts found it appropriate to deduct anticipated costs of sale in determining the proper value of the creditor's interest in the estate's interest in the property.

Here, we have the opposite situation. The Debtor is going to keep the Property. Clearly, liquidation value is not relevant as the Property is not being liquidated. Further, since the Debtor's Plan provides for it to retain the Property, the value of Bank's interest in the Debtor's interest in the Property should be determined without regard for the hypothetical costs that may be incurred by Bank if it gets the Property back. Why? Because it is not getting the Property back. Valuation under § 506 must be with a view to the proposed disposition of the Property. This Court specifically declines to follow the line of cases represented by *In re Malody*, 102 B.R. 745 (9th Cir. BAP.1989) and *In re Coby*, 109 B.R. 963 (Bankr.D.Nev.1990). Those cases basically provide that even when the property is being retained by the Debtor "the appropriate value is the value of the property in the creditor's hands, i.e. how much would the creditor receive upon liquidation." *Coby*, supra at 964. If valuation in the hands of the creditor is the appropriate standard when the Debtor is keeping and operating the Property, then it is difficult for this Court to think of a situation when valuation in the hands of the creditor would not be the standard. This is contra Congressional intent that value be "[d]etermined on a case-by-case basis taking into account the facts of each case and the competing interest in the case." H.R.Rep. No. 595, 95th Cong., First Sess. 356 (1977), U.S.Code Cong. & Admin.News, 1978, pp. 5787, 6312.

### Amount of Valuation

The fair market valuation was determined by both the appraisers as to the surface estate by using the traditional willing seller/willing buyer standard with neither party being under a compulsion to act. The difference between them was marginal. The Court finds the value of the surface estate to be $151,830.00.

The primary differences in the two mineral estate appraisals are that the appraisers used different pricing (Debtor—$20.00 oil and $1.70 gas; Bank—$15.00 oil and $2.00 gas) and different decline rates were used. Based upon both appraisals, this Court feels that the value of the Debtor's mineral estate in the Property is $60,000.00.

Therefore, the value of the Bank's interest in the Debtor's interest in the Property under the circumstances of this case and with due regard to the intended use of the Property by the Debtor, is $211,830.00.

Ad Valorem taxes of $775.82 will not be deducted as the Debtor proposes to keep the Property under the Plan and payment of the ad valorem taxes on the Property being retained is one of the joys of ownership. Conversely, if the Property were being returned, the Bank would be charged with these.

### Deduction for Adequate Protection Payments

During the existence of this proceeding, Debtor has paid Bank $2,650.00 per month beginning in February, 1989. Through March, 1990, fourteen payments to total sum of $37,100.00 will have been made by the Debtor to Bank upon this note. These payments have been applied

by the Bank to the principal of the indebtedness. The question before the Court now is whether those payments should be applied to the unsecured portion of the note as Bank contends or to the secured portion of the note as Debtor contends.

Clearly, the adequate protection payments cannot be applied by the Bank against interest or simply retained as "lost opportunity costs" as the Bank is an undersecured creditor. *United Savings Ass'n. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

Further, in instant case, the value of the collateral has not decreased from the date of the filing, but may, in fact, have increased. Adequate protection payments, by definition, are intended to protect the secured lender from a decrease in the value of the collateral securing its indebtedness. 11 U.S.C. § 361. Here, there is none.

The overriding purpose of § 361 together with § 506 insofar as it relates to undersecured creditors is to provide them the value of their collateral and a deficiency claim, nothing more and nothing less. Collateral is simply security for repayment of the loan, and the secured claim of Bank under § 506(a) is equal to the value of its collateral. Had the bankruptcy not intervened, Bank would have obtained the value of its collateral by foreclosure and in the process, established an unsecured deficiency claim. In bankruptcy, Bank has gotten $37,100.00 of the value of its collateral in cash. The remaining value is still secured by its collateral and will be paid to Bank under the Debtor's Plan; plus it still has its unsecured deficiency claim the same as if it had foreclosed. Therefore, since the value of the collateral has not decreased during the case, the adequate protection payments made to Bank during the case must be applied against the secured portion of Bank's indebtedness. That way the Bank gets what it is entitled to, nothing more and nothing less. It is simply not possible to apply the adequate protection payments to the unsecured portion of the indebtedness as that would be an unauthorized transfer under 11 U.S.C. § 549 and in violation of the prohibition against paying unsecured creditors in a reorganization other than through a Plan.

The sum of $37,100.00 (plus all future adequate protection payments) must be deducted from the value of the collateral the Court has set to determine the present amount of the secured claim of Bank. Accordingly, $37,100.00 deducted from $211,830.00 results in a present secured claim of $174,034.00. That claim will be reduced by $2,650.00 each and every month in which the Debtor continues to make a $2,650.00 adequate protection payment beginning April, 1990 forward.

The foregoing Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law in accordance with Bankruptcy Rule 7052. A separate order of even date herewith will be entered by the Court.