**In re JOHNSON, Francis Julian and Johnson, Maxine Rae, Debtors.**

**Bankruptcy No. 90–01296.**

United States Bankruptcy Court, D. Idaho.

Aug. 2, 1990.

Peter J. Contos, Ririe, Idaho, for debtors.

Clinton E. Miner, Twin Falls, Idaho, for Randy Hansen Chevrolet, Inc.

L.D. Fitzgerald, Pocatello, Idaho, Trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

### BACKGROUND

In this case, the Court is asked to revisit the subject of the proper method by which a creditor's allowed secured claim in a debtor's automobile is valued under Section 506(a) of the Bankruptcy Code in connection with the "cram down" of that secured

claim in a proposed Chapter 13 plan pursuant to Section 1325(a)(5)(B). In particular, the Debtors own a 1987 Nissan pickup in which the creditor, Randy Hansen Chevrolet, Inc., claims a consensual lien to secure the remaining balance of the purchase price. Debtors propose in their plan to pay the creditor $3,475 with interest over the term of the plan.[1] The creditor objected claiming that the proposed amount did not represent the true value of the vehicle, and therefore it was not receiving the amount of its allowed secured claim through the plan. *See* 11 U.S.C. § 1325(a)(5)(B). While it was determined at the confirmation hearing that the plan could not be confirmed because of the need for amendment to provisions concerning priority creditors, and to satisfy the Trustee's concerns, with the parties' consent the Court conducted an evidentiary hearing as to the value of the pickup pursuant to Section 506(a) in anticipation that an amended plan will be filed.

At the hearing, the Court heard the testimony of only one witness, Mr. Butler, the general manager of the creditor, who offered his opinion as to value, supporting it with evidence in the form of two regional auction reports. On cross-examination, Debtors' counsel had admitted into evidence excerpts from the July, 1990 market report published by the National Automobile Dealers Association ("NADA") for the Pacific Northwest Region with respect to the pickup.

Creditor argues that the Court should adopt the retail value of this vehicle as the amount of its allowed secured claim. In the alternative, if retail is not used, the Court should adopt a value which represents what a dealer would have to pay to purchase this particular pickup, which this creditor refers to as the vehicle's "wholesale value". Debtors claim that under the applicable case law, this Court is required to value the pickup according to the published "wholesale value" as contained in the NADA report. The Court took the

question under advisement and renders this opinion for two reasons.

First, as discussed below, the Ninth Circuit Bankruptcy Appellate Panel has recently published a decision, the substance of which ruling is significant as to this common issue. Next, counsel for Debtors claims that "chaos" will be the result if the Court does not adopt the NADA values in every case. The Court desires to both dispel any doubts as to the status of the case law in this district, and to address the practical significance of these rulings.

## THE CASE LAW

Debtors cite the Court to two early decisions by Judge Young in support of their position that as a matter of law, the Court should impose NADA values as the standard for vehicle valuations under Chapter 13. One of the decisions, *In re Wiegert*, 81 I.B.C.R. 33, seems to say as much:

> "... I conclude that the wholesale value used by dealers selling vehicles in the area with sale, storage or maintenance expense, as established by the NADA Book or Kelly Blue Book is the value which should be used for the determinations required by Section 506."

*Id.* at 34–35. A review of the decision indicates that the only other "value" offered in evidence to the Court was the full amount due to the creditor under the terms of a dealer recourse financing agreement. Therefore, it is uncertain what the result may have been if other evidence as to the value of the specific vehicles had been submitted to the Court.

In addition, there is another problem with applying the decision in all other cases, if that in fact was the intent of the Court, since the decision refers to two separate market value reports, i.e. the NADA Book and the Kelly Blue Book. If Debtors' argument is correct and this decision establishes a firm rule of law for all cases, what

---

**1.** The Debtors' plan actually proposes payment to First Interstate Bank on account of this secured claim. However, Randy Hansen Chevrolet, Inc. represents it has repurchased all interest under the security agreement under a re-course provision with the Bank. Debtors do not dispute this representation and so it will be assumed that the objecting creditor here has standing to object to, and if the plan is confirmed, will be bound by this provision.

is to be done when the two reports differ with respect to a vehicle's value?

Later case law cited by the Debtors suggests that no "across the board" valuation technique was intended by *Wiegert*. In *In re Christensen*, 82 I.B.C.R. 83 (Young, J.), the Court states:

"Under § 506 of the Bankruptcy Code, an allowed secured claim is defined as the value of the creditor's interest in the estate's interest in the collateral, which value is to be determined in light of the purpose of the evaluation and the proposed disposition or use of the property. In chapter 13 plans, the allowed secured claim has been defined by this Court as the liquidation value of the collateral, as determined by agreement of the debtor and creditor, or by the Court after hearing ..."

*Id.* at 84. If in fact the "liquidation value" referred to by the Court in *Christensen* is the intended equivalent of the "wholesale value" adopted in *Wiegert*, and if market reports are the binding indicators of those amounts, it is curious that the Court is concerned with "the proposed disposition or use of the property." 11 U.S.C. § 506(a).

Debtors attempt to make too much of the language used by the Court in its previous decisions. With respect to the method of determining the allowed secured claim for cram-down purposes in a Chapter 13 case, the Court has actually been true to the dictates of Section 506(a) giving due regard to the purpose of the valuation and the proposed disposition or use of the property.[2]

Any review of instructive case law should include the recent decision in *In re Malody*, 102 B.R. 745 (9th Cir.B.A.P.1989) discussing the precise issue here before the Court. In making the valuation, the bankruptcy court in *Malody* had been offered by way of stipulation of the parties a wholesale and a retail value. The bankruptcy court opted for the wholesale value. In framing the issue on appeal, the Appellate Panel further defined the "wholesale"

figure to be the amount the creditor would receive from selling the vehicle in a commercially reasonable manner. *Id.* at 747.

The Panel initially reviewed the legislative history to Section 506(a) specifically noting that both Congressional committees intended that security valuations be made on a case-by-case basis. 102 B.R. at 748 *citing to* H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977) and S.Rep. No. 989, 9th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Reviewing case law from the bankruptcy courts, the Court noted a wide divergence in methodology in applying this principal, concluding that "... no clear cut formula or benchmark of value exists." 102 B.R. at 748. The Panel then discusses the perspective from which the valuation in the case before it should proceed, concluding:

"First, we recognize the well-reasoned view that the purpose of valuation under Section 1325(a)(5)(B)(ii) is not to assure that a secured claimant will receive as much money as the debtors would be required to spend to replace the vehicles. Rather, the purpose is to protect a secured claimant from loss by assuring that it will receive as much money under the plan as it would receive were it permitted to sell the vehicles in a commercially reasonable manner. The replacement cost is not an appropriate standard.... although the replacement value of certain types of collateral may be the appropriate measure in certain instances, it is not the most appropriate measure in other instances."

102 B.R. at 749. The "certain instances" to which the Court refers in which replacement cost may be an appropriate standard are represented by those cases where the collateral is essential to the effectuation of the debtor's plan, as opposed to merely incidental to the plan. *Id.* For example, if the collateral is the real property from which the income to fund the plan will be produced, replacement cost may be the necessary valuation standard, as compared to

---

**2.** For examples of the case-by-case approach utilized by this Court in different situations *see In re Sawtooth Radio Corp.,* 86 I.B.C.R. 183; *In re*

*Aamodt,* 86 I.B.C.R. 299; *In re Green,* 87 I.B.C.R. 119.

the debtor's car which he simply drives to and from work.[3] Concluding that in the case before it the vehicles were not "essential", the Court approves the Bankruptcy Court's adoption of wholesale value.[4]

The teachings of *Malody* are therefore clear, and the rulings of this Court are quite consistent with its results.[5] Value, for purposes of determining an allowed secured claim in a Chapter 13 cram-down situation will be set, after consideration of the facts of each case, at an amount which equates with what the creditor could expect to receive were the collateral repossessed and sold in a commercially reasonable manner. There are no hard and fast rules to be applied, although replacement cost may be an appropriate standard where the collateral is essential to the effectuation of a debtor's proposed plan, and wholesale value may be appropriate where the collateral is simply incidental to the success of the plan. "Wholesale value" as that term is used, however, is not necessarily the wholesale value referred to in the market reports, such as NADA.

This ruling should not "bring the chapter 13 system to its knees" as Debtors assert. The NADA reports constitute a relevant, general guide to the value of used vehicles. However, the value proposed in the plan, whether based upon NADA or some other source, will be subject to review and all parties will have the right to submit other relevant evidence of value, including expert testimony. As with most issues, nothing

prevents the parties from negotiating an agreed value on vehicles to avoid any delay, expense and uncertainty they may perceive in connection with a formal valuation hearing.

## THE VALUE OF DEBTORS' PICKUP

■ In this case, the 1987 Nissan had been repossessed by the creditor prior to the filing of the bankruptcy petition. Mr. Butler testified that the vehicle was actually on creditor's lot for resale at the time of the hearing. The witness testified that currently there is a high demand in the market for good used cars in the $3,000–6,000 price range in general, and that there is a particularly strong call for small pickups. Because of this and since this pickup was in "above average" condition, it would be offered to the public for $5,995, and that in no event would Mr. Butler expect it to sell for less than $5500.

The witness sponsored into evidence recent reports from two regional auto auctions frequently patronized by local dealers which showed comparable sales on small pickups, depending upon condition, from $4,300 to $6,900 without deduction for seller's costs. He commented that because of the condition of the Debtors' pickup, and the state of the local market, this vehicle would not be auctioned, but would certainly be retailed. He criticized the NADA value on this truck (approximately $3,900) as inaccurate; that it is never used by dealers or lenders as anything other than a general

3. This Court has, in substance, adopted this approach in the Chapter 12 setting where the issue is valuation of the farm ground operated by the debtor to fund a plan. *See, e.g., In re Chandler,* 88 I.B.C.R. 153 and *In re Kerner,* 88 I.B.C.R. 157, both of which adopt fair market value as determined by the "market approach" as the appropriate standard for valuing the real estate.

4. The creditor in *Malody* argued to the Panel on appeal that the wholesale value stipulated did not represent the "commercially reasonable resale" amount, and that therefore a higher allowed secured claim was justified. 102 B.R. at 748, n. 1. Since no evidence was presented by the creditor in the bankruptcy court of any higher value, the Panel declined to "split the baby" by using a median value. *Id.*

5. Debtors' counsel argues that this Court is bound by the ruling in *Malody.* He and other local bankruptcy practitioners may be surprised

to learn that whether a BAP decision is controlling authority as to all bankruptcy courts in the Ninth Circuit is an unsettled issue. In *Bank of Maui v. Estate Analysis, Inc.,* 904 F.2d 470, 20 B.C.D. 919 (9th Cir.1990), the Court of Appeals refused to decide the issue noting, however, that district courts were not bound by Panel decisions. The BAP has itself determined that all circuit bankruptcy courts are bound by its rulings. *In re Windmill Farms, Inc.,* 70 B.R. 618, 621 (9th Cir.B.A.P.1987) rev'd on other grounds, 841 F.2d 1467 (9th Cir.1988). Other courts have held otherwise. *See, e.g., In re Junes,* 76 B.R. 795, 797 (Bankr.D.Or.1987). This Court will not decide the issue here since even if this Court is not bound to follow the rules announced in *Malody,* it elects to do so, there being no inconsistent authority from our U.S. District Court.

guide to value; and that it was traditionally low on vehicle values in this area. Butler opined that if the pickup were to be "wholesaled", the creditor could expect to receive $4,500–4,700, but again, this course was not realistic in light of the pickup's retail marketability. If retailed, there would be a salesman's commission and other costs of approximately $250 which would be paid from the dealer's receipts.

Debtors did not present any witnesses in support of their proffered values. In addition, the Court heard no evidence concerning how essential retention of the vehicle is to the successful operation of Debtors' proposed plan. The information in Debtors' schedules in this case is inconclusive on this point. The Court will therefore assume the vehicle is not vital to the funding of Debtors' plan.

After consideration of all the evidence, and in light of the case law, the Court fixes the creditor's allowed secured claim at $5,500. This sum represents what the Court believes the creditor would receive upon resale of the vehicle already in its possession. The evidence suggests in this case that the vehicle will not be sold to another dealer or at an auction because of the strong demand for this vehicle in this particular market. The Court will not deduct sales costs or commissions from the projected sales price. *See In re Coby*, 109 B.R. 963 (Bankr.D.Nev.1990). In addition, this valuation will not be reduced for the fact that Debtors voluntarily continued insurance coverage on the truck after the bankruptcy, something they are required to do under their purchase agreement, and the benefit of which they at least jointly enjoyed.

This decision constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052. Creditor's counsel shall submit an order establishing its allowed secured claim at $5,500. Debtors shall file any amended Chapter 13 plan within 15 days of the date hereof and notice the same for a hearing to interested parties.