**In re Bernice COHEN, Debtor.**

**Bernice COHEN, Plaintiff,**

v.

**William E. F. WERNER, Defendant.**

**Bankruptcy No. 180–03537–21.**
**Adv. No. 181–0012–21.**

United States Bankruptcy Court,
E. D. New York.

Aug. 21, 1981.

Holzer & Nappi, Huntington, N. Y., for debtor-plaintiff.

Charles R. Tropp, Staten Island, N. Y., for defendant William E. F. Werner.

Robert W. Tauber, Chapter 13 trustee, Brooklyn, N. Y.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

On June 23, 1980, Bernice Cohen filed a petition under Chapter 13 for the sole purpose of discharging a judgment debt she owed Dr. William E. F. Werner. Dr. Werner was enforcing his judgment against her marital residence when he was stayed by the filing of the Chapter 13 petition.

Dr. Werner objects to her plan on several grounds, of which the principal one is that the plan fails to pay him the amount of his claim. He has also moved to dismiss her Chapter 13 petition as not filed in good faith, because Mrs. Cohen has no debts, other than his judgment.

To meet these objections, in part, Mrs. Cohen has brought this adversary proceeding pursuant to § 522(f) of the Bankruptcy Code to avoid, or reduce, Dr. Werner's judicial lien on her residence on the ground that it impairs her homestead exemption.[1] 11 U.S.C. § 103(a) makes clear that 11 U.S.C. § 522(f) applies in Chapter 13 proceedings. *In re Canady*, 7 BCD 749, 9 BR 428 (Bkrtcy. C.D.Conn.1981). Alternatively, Mrs. Cohen requests an order declaring Dr. Werner's lien subject to modification pursuant to § 1322(b).[2]

The hearing on confirmation of Mrs. Cohen's Chapter 13 plan was combined with trial of her complaint in the adversary proceeding because critical to each is the value of the debtor's residence.

On May 27, 1980, Dr. William E. F. Werner, d/b/a Mid-Island Hospital, secured a judgment against Bernice Cohen in the New York Supreme Court in the amount of $11,604.13. The judgment was based on Mrs. Cohen's guarantee of payment for services to Mrs. Cohen's mother in the last three months of her life. Mrs. Cohen refused payment after her mother died.

This judgment has become a judicial lien against Mrs. Cohen's residence at 96 Tardy Lane, Wantagh, New York. This house is the principal residence of Mrs. Cohen, who lives there with her husband and their two sons, one in high school and the other in college. Shortly after she and her husband jointly purchased this property in 1967, he conveyed his interest in it to her, although he continued to meet the mortgage payments.

Mrs. Cohen is employed as a secretary. She has worked for the same firm for the past seven years and earns approximately $9,000 per year. Her husband's earnings as an appliance salesman average $20,000 per year. He has not joined Mrs. Cohen in filing under Chapter 13. However, his contributions to her living expenses are reflected in the budget submitted as showing her ability to meet the payments called for by her plan.[3]

Mrs. Cohen proposes to pay the Chapter 13 trustee $70 per month for 36 months, all

---

1. 11 U.S.C. § 522(f), insofar as pertinent, reads:
   "(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—(1) a judicial lien; * * *."

2. Subsection 2 of 11 U.S.C. § 1322(b) permits a Chapter 13 plan to "modify the rights of holders of secured claims, other than a claim se-

cured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims." 11 U.S.C. § 101(37) defines a "security interest" as a "lien created by an agreement," a definition which excludes a judicial lien.

3. Mrs. Cohen's budget is predicated on her husband paying half the costs of maintaining the home, most of the cost of the household for food, and all the cost of her clothing.

for the benefit of Dr. Werner. Mrs. Cohen has no other creditors, except for the mortgages on her home, which will be paid outside the plan. After deduction of the trustee's fee, Dr. Werner will receive $2,268 under Mrs. Cohen's plan.

■ Before a plan may be confirmed, certain requirements must be met. The Court must find that the plan was "proposed in good faith" (11 U.S.C. § 1325(a)(3)); that unsecured creditors receive as much as they would in a liquidation under Chapter 7 (11 U.S.C. § 1325(a)(4)); that secured creditors are satisfied in one of several ways (11 U.S.C. § 1325(a)(5)); and that the "debtor will be able to make all payments under the plan and to comply with the plan" (11 U.S.C. § 1325(a)(6)).

Dr. Werner claims that Mrs. Cohen's plan does not satisfy § 1325(a)(5) of the Code governing secured claims. This subsection requires that if a holder of an allowed secured claim neither accepts the plan, nor receives back his collateral, that "the value, as of the effective date of the plan, of property to be distributed [to him] under the plan" be "not less than the allowed amount" of his claim.

What is meant by "the allowed amount" is explained by § 506 of the Code which defines it as "the value of such creditor's interest in the estate's interest in such property" If the claim exceeds the value of the creditor's interest in the estate's interest, the excess becomes an unsecured claim.[4] The estate's interest in a debtor's property is limited by the election given a debtor to exempt property from her estate. 11 U.S.C. § 522(b). Any property so exempted does not become part of the debtor's estate.

Mrs. Cohen has exercised her election, and has claimed the exemption to which she is entitled under state law. As permitted by the law of New York, she has exempted from the marital residence the $10,000 in value permitted for a homestead.[5] This means that Dr. Werner's claim is a secured claim only to the extent that Mrs. Cohen's equity in her residence at 96 Tardy Lane, Wantagh, New York exceeds the $10,000 homestead exemption.

At the time the proceeding was filed, there were two mortgages on the house: one held by the Seamen's Bank for Savings, on which there was owed $14,462.94[6]: the other, which was held by Marine Midland Bank, N.A., on which there was owed $5,599.25. The two together totaled $20,062.19.

It is Dr. Werner's position that the house has a value of $45,000, so that his claim is fully secured and he must be paid out the full amount of his claim over the life of the plan.[7]

Mrs. Cohen, for her part, insists that the value of her home is no more than $32,000,

4. Section 506(a) reads:

§ 506. Determination of secured status

"(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

5. Section 5206(a) of the New York CPLR (Consol.Supp.1980) reads, in relevant part:

"§ 5206. Real property exempt from application to the satisfaction of money judgments
"(a) Exemption of homestead. Property of one of the following types, not exceeding ten thousand dollars in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof: 1. a lot of land with a dwelling thereon, * * *."

6. On the date the petition was filed, Seaman's held $1,112.94 in escrow for the payment of future taxes. This escrowed amount constituted an asset of the estate on that date.

7. If the value of the house is $45,000, Mrs. Cohen's equity is $24,937.81. Subtracting her homestead exemption of $10,000 leaves $14,937.81, which more than covers Dr. Werner's claim of $11,609.13.

and that only a small portion of Dr. Werner's judgment is secured, which portion is covered by her Chapter 13 plan. Relying on the same value, $32,000, she invokes 11 U.S.C. § 522(f) to avoid, in part, Dr. Werner's judicial lien on the ground that it impairs her homestead exemption.[8] Of course, if the house is worth $45,000, no part of Dr. Werner's lien can be avoided.

■ The critical issue in this proceeding is the value to be assigned to Mrs. Cohen's residence. How is that value to be determined? Is it the price the house would bring at a forced sale? The price in the open market? The net proceeds in a Chapter 7 proceeding? *Cf. In re Jones*, 6 BCD 965, 5 BR 736 (Bkrtcy.C.E.D.Va.1980).

Neither the language of the statute, nor its legislative history, provides any guidance. 11 U.S.C. § 506 says only that the value of a secured claim "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property." The legislative history is equally unenlightening. All it adds is that the concept of value is to be flexible with "value" to be determined on a case-by-case basis, taking into account the facts and the competing interests in each case. H.R. Rep. 95–595, 95th Cong., 1st Sess. 356 (1977); S.Rep. 989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The record in this case offers only two alternatives: fair market value,[9] and the amount that could be realized at a distress sale,[10] placed by Mrs. Cohen's expert at $32,000.

Confining this Opinion to these two alternatives, this Court concurs with the position taken by other bankruptcy courts which have considered this question, that forced sale value should not be used, but rather, what the property would bring if disposed of in a commercially-reasonable manner. *E. g., In re Savloff*, 6 BCD 349, 4 BR 285 (Bkrtcy.C.E.D.Pa.1980); *In re Jones*, 6 BCD 965, 5 BR 736 (Bkrtcy.C.E.D.Va.1980); *In re Klein*, 7 BCD 668, 10 BR 657 (Bkrtcy.E.D.N.Y.1981). The debtor is not suffering the diminution in her equity that a forced sale would produce; she remains in possession of her home, enjoying the possibility of benefit from future appreciation. Evenhandedness would seem to dictate that the creditor, likewise, escape the penalties of liquidation.[11]

■ Mrs. Cohen's house is part of a Levitt development of some 16,000 homes in the communities of Levittown, Wantagh, and parts of Hicksville. The basic ranch-type home, like her residence, contained four rooms downstairs and a finished attic on the second floor. Like many other Levitt homes, Mrs. Cohen's house has been improved: the downstairs has been expanded, part of the attic has been finished to incorporate a bedroom, and the kitchen and bathroom have been refitted. But it still has only one bathroom and three bedrooms.

The expert witness called by Dr. Werner, Arnold Skalky, a real estate broker, stated that in his opinion, the house is "very close

---

8. If the house has a value of only $32,000, Mrs. Cohen's equity is $11,937.81. Subtracting her $10,000 homestead exemption from this figure leaves only $1,937.81. To the extent that Dr. Werner's judicial lien exceeds this figure, it cuts into her exemption and is vulnerable. *In re Hagerman*, 7 BCD 542, 9 BR 412 (Bkrtcy.C.W.D.Mo.1981).

9. "Fair market value" was defined by the debtor's expert witness as "the highest price in terms of dollars that a willing * * * seller will place [on] the property [for] sale under normal circumstances with neither [party], that being either the buyer or seller, acting under duress or compulsion to sell." Dr. Werner's expert witness never defined what he consistently termed "market value."

10. Distress or "forced sale value" was defined by the debtor's expert "as: 1) The act of offering and transferring property, and for a valuable consideration, under conditions of compulsion. 2) Frequently a sale at public auction made by virtue of a court order."

11. The fact that, in this case, the issue of valuation arises in a Chapter 13 context distinguishes *In re Walsh*, 6 BCD 793, 5 BR 239 (Bkrtcy.C.D.C.1980). There, in determining whether the debtor should be required to turn over property to the Chapter 7 trustee for liquidation, or should be permitted to retain it as exempt, the bankruptcy court used the figure the trustee would receive upon liquidation to measure the exemption.

to the $45,000 level, based on the current market value in today's market, on houses that are on the market at the present time, that have the same physical structure, three bedrooms, one bathroom, etc." Examining the comparables relied on by Mr. Skalky in light of the entire record, the Court has concluded that they fail to support him. None are located on the same street as Mrs. Cohen's home; one is as far away as half a mile. That one, unlike Mrs. Cohen's, contained four full bedrooms, two baths, a fireplace, and occupied a corner lot. Mr. Skalky had evidently never seen the home, since he described it as containing only two bedrooms and a single bath.

Although Mr. Skalky knew of a sale on the same street as Mrs. Cohen's house, he omitted it from his short list of "houses sold in the immediate vicinity." While showing sales of two houses on Twin Lane, both for prices in excess of $42,000, he omitted a sale he, himself, had made of a four-bedroom, two-bath house on the same street for only $40,000.

The inference is inescapable that the sales adduced by him in support of his appraisal are not representative, but were selected because they occurred at unusually high prices for reasons which only examination of each house and the circumstances of its sale would disclose. The probative value of Mr. Skalky's testimony is further eroded by his assertion that houses in Levittown were in such demand that any house could be sold over a weekend, and that the same money would be realized in a distress sale as in any other. Yet, uncontradicted evidence was given that a Levittown house—albeit in poor condition—had remained unsold for six months until the owner had been forced to sell it for $30,000, the amount of the mortgage it carried.

The debtor's expert, DeGeronimo, placed the market value of Mrs. Cohen's house between $35,000 and $37,000, and its forced sale value at $32,000. He relied on four sales of comparable property all on the same street as Mrs. Cohen's house, Tardy Lane, and sold for $36,000, $37,000, $43,281, and $42,000, respectively. Three of the sales were made prior to the filing of Mrs. Cohen's petition; one sale, that for $42,000, was subsequent thereto. Since each property is unique, he made certain adjustments for such factors as location, date of sale, size of the property, and overall physical condition, to arrive at a market value for Mrs. Cohen's property. Mr. DeGeronimo explained that the prices received for the two houses that had sold for more than $40,000 was due, in the case of one, to its excellent condition, and the other, the availability of an assumable mortgage in the amount of $25,000, carrying the relatively low interest rate of 8.5 percent. On further reflection, the Court has concluded that its initial reaction that the nature of available financing is irrelevant was erroneous. As a Note entitled "Market Value of Single-Family Residence—Market Comparison Appraisal" in 5 *American Jurisprudence Proof of Facts* 411, 421 (1975), observes, where a "buyer can finance the transaction by assuming an existing mortgage on the property bearing an interest rate less than that prevailing in the current market * * * the seller should be able to obtain a premium on the price of the property reflecting the buyer's savings and mortgage interest payments" and the "sales price should therefore be reduced by the present value of the amount of these savings."

Applying the principles described earlier, and assuming a sale which, while not forced, is not made under optimum conditions, the Court believes that the value of Mrs. Cohen's house for purposes of this proceeding is $36,000. Supporting this conclusion is the fact that a home on the same street with two baths and four bedrooms, and with superior interior space to that of Mrs. Cohen's residence, although with a smaller plot and lacking a garage, sold for $36,000 just a little over a year before she filed for relief under Chapter 13.

Pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii), the value of the collateral establishing the amount of the secured claim is to be determined as of the "effective date of the plan." As Bankruptcy Judge Parente noted in *In re Klein*, 10 BR 657 (Bkrtcy.C.E.D.N.Y.

1981), the term "effective date of the plan" is not defined. Some courts have deemed that date to be the date the petition is filed (*In re Adams*, 5 BCD 1234, 2 BR 313 (Bkrtcy.C.M.D.Fla.1980)); others, the date of the confirmation hearing (*In re Crockett*, 6 BCD 226, 3 BR 365 (Bkrtcy.C.N.D.Ill. 1980); *In re Busman*, 6 BCD 683, 5 BR 332 (Bkrtcy.C.E.D.N.Y.1980)). In this case, however, it is immaterial what date is employed because there is no evidence that there was any change in the value of this property as among the various dates.

Although many of the comparable sales upon which Mr. DeGeronimo relied took place more than a year before Mrs. Cohen filed her petition in July, 1980, Mr. DeGeronimo testified that prices for these houses had remained steady, or declined, an opinion borne out by the fact that a house at 53 Tardy Lane, sold almost one year after a house at 63 Tardy Lane and superior in terms of number of bedrooms and bathrooms, went for a slightly lower figure.

Valuing the house at $36,000, it is evident that Mrs. Cohen's plan cannot be confirmed because, under it, Dr. Werner will receive substantially less than the allowed amount of his secured claim. The Court finds the allowed amount of the secured claim is $5,937.81. This represents the difference between the value of Mrs. Cohen's property ($36,000) and the sum of the mortgages ($20,062.19) and her homestead exemption ($10,000). Her plan proposes to pay Dr. Werner only $2,268 over the life of the plan. However, on a valuation of $36,000, Mrs. Cohen is entitled to a judgment partially granting the relief sought in her complaint. Dr. Werner's lien must be reduced by $5,666.32. This is the amount by which the lien impairs her $10,000 homestead exemption, leaving Dr. Werner with a lien of $5,937.81.

Mrs. Cohen has the right to propose a plan which will satisfy the Code. However, in proposing such a plan, she must bear in mind that under the language of the Chapter 13 "cram-down" provisions, the creditor must receive the present value equivalent of the allowed amount of its secured claim. Since this amount is to be paid out over a period of time, some additional amount must be included to protect the secured creditor from loss due to the deferred payment. *In re Klein, supra.*

Because it appears likely that Mrs. Cohen will file an amended plan, it seems appropriate to address some of the other questions raised by Dr. Werner.

He challenges Mrs. Cohen's good faith because her plan does not call for any payments made to unsecured creditors. The belief that unsecured creditors are necessary where relief is sought under Chapter 13 has led many debtors to arrange their affairs so that at the time of filing, some unsecured creditors can be shown, as can easily be done simply by delaying payment to a credit card company, an oil company, or some other recurrent creditor. No requirement that is so easily satisfied should be deemed a requirement of substance.

That Mrs. Cohen has always paid her obligations, and continues to do so, and, therefore, owes no other creditors, does not seem to be a reason for depriving her of the right to save her home through Chapter 13.[12]

■ But, in any event, it is not necessary in this case to reach the question whether a Chapter 13 plan can be filed where there are no unsecured creditors because Dr. Werner is now an unsecured creditor in the amount of $5,666.32, the excess of his claim over his judicial lien.

12. This is not a case where a debtor with large debts to unsecured creditors seeks to use Chapter 13 to discharge those debts by paying such creditors little or nothing. The bankruptcy courts are divided on the question as to whether in such circumstances, "good faith" should be found to be lacking. Some courts have refused confirmation to zero payment plans (*E.*

g., *In re Melroy*, 7 BCD 32, 7 BR 513 (E.D.Cal. 1980); *In re Stein*, Bankr. No. 180–04278–16, unreported Opinion of Bankruptcy Judge Price (B.C.E.D.N.Y., April 20, 1981)); others have not (*E. g., In re Stollenwerck, Jr.*, 7 BCD 199, 8 BR 297 (M.D.Ala.1981); *In re Cloutier*, 6 BCD 196, 3 BR 584 (Bkrtcy.C.D.Colo.1980)).

Since he is an unsecured creditor, he must receive as much under Chapter 13 as he would in a liquidation under Chapter 7. 11 U.S.C. § 1325(a)(4). This means that the Chapter 13 plan must pay out to him over the life of the plan whatever the value of Mrs. Cohen's excess property over and above her exemptions.

The hearing in this proceeding has disclosed numerous assets not covered by her exemptions. One such asset is the money held in escrow by the Seaman's Savings Bank for the payment of taxes at the time of filing of the petition. At the time the petition was filed, the bank was holding $1,112.94 in escrow. Another possible asset is the funds in the joint savings and checking accounts maintained by Mr. and Mrs. Cohen to the extent that such money belonged to Mrs. Cohen. Her engagement ring may also be an asset for purposes of Chapter 13.

It would go beyond the necessities of this Opinion to determine precisely to what extent Mrs. Cohen's assets exceed her exemptions, since the only issues currently before the Court are the extent of Dr. Werner's judicial lien and the eligibility of Mrs. Cohen's plan for confirmation. However, before an alternative can be approved, the Court must find that Dr. Werner, as Mrs. Cohen's only unsecured creditor, will receive over the life of the plan the excess of her assets over her exemptions, plus whatever interest factor is necessary to yield to him the present value of such excess.

One more matter remains to be considered. Dr. Werner has objected to Mrs. Cohen's recourse to Chapter 13 on the ground that in view of her reliance on her husband for payment of her necessary expenses, the Court will be unable to make the finding required by § 1325(a)(6) that the "debtor will be able to make all payments under the plan and to comply with the plan."

Like many questions under Chapter 13, the extent to which a married petitioner may rely on contributions from a spouse who does not join in filing is a difficult one. It is not unusual for persons filing under Chapter 13 to include as part of the income from which they plan to meet their obligations under the plan contributions from spouses, sons, daughters, or parents.

When Congress extended Chapter 13 to include other than wage earners, it indicated at the same time that it wished to take a liberal view of the income from which Chapter 13 payments could be made. Among the possible sources mentioned in the legislative history are welfare payments. H.R.Rep. 95–595, 95th Cong., 1st Sess. 119 (1977). If the generosity of the Government can be considered in determining the income available for meeting Chapter 13 obligations, there seems no good reason for excluding the generosity of a close relative. Moreover, in the case of a husband, there is more than generosity to be considered; the state of matrimony imposes its own financial obligations.

Mrs. Cohen is not proposing to use her husband's money to pay Dr. Werner; she proposes to pay him out of her own earnings; she makes a substantial salary as a secretary. Her job is permanent; she has held it for the past seven years; there is every reason to believe that she will be able to continue working in this position indefinitely.

The debtor's husband has taken the stand to indicate his willingness to assist his wife in meeting her obligations under the plan. He has every reason for doing so because their ability to retain the home for which he has paid, and for which he continues to pay, depends upon his doing so. It should be noted that the very equity the creditor here is seeking to reach was created by the debtor's husband. It would be ironic to compel its forfeiture on the ground that his income must be disregarded in considering whether he and his wife should be allowed to remain in possession.

Another relevant consideration is that even should Mrs. Cohen prove unable to make the payments under the plan, Dr. Werner cannot be prejudiced. The other liens on the property are being steadily reduced, while the value of the house, it can

be assumed on the basis of experience to date, will increase, or, at the very least, not decline. Since the secured creditor continues to hold a lien on the property, he should be able to realize in the future at least as much as he would today in the event of liquidation. Therefore, if Mrs. Cohen files a plan which otherwise satisfies the requirements of Chapter 13, it will not be denied confirmation, either for lack of good faith, or because of doubt as to her ability to make the payments under the plan, as long as total payments under the plan continue to be within the means of Mrs. Cohen, and provided her husband continues to provide her with necessities, as he has done until now.

For the foregoing reasons, the Court is reducing Dr. Werner's lien on the property constituting the principal residence of the debtor and her husband to $5,937.81. Confirmation will also be denied Mrs. Cohen's plan for failure to satisfy § 1325(a)(4) and (a)(5).

The foregoing constitutes the Court's findings of fact and conclusions of law. Orders consistent with this Opinion are being entered contemporaneously.