**In re Doris D. COBY, Debtor.**

**UNITED STATES of America,
Appellant,**

v.

· **Doris D. COBY, Appellee.**

**Nos. BK–S–87–2615–LBR,
CV–S–90–438–PMP (LRL).**

United States District Court,
D. Nevada.

Jan. 28, 1991.

Mark G. Fraase, Trial Atty., Dept. of Justice, Tax Div., Washington, D.C., for appellant.

Mark Segal, Las Vegas, Nev., for appellee.

Kathleen McDonald, Las Vegas, Nev., trustee.

## OPINION

PRO, District Judge.

The United States appeals from a judgment of the Bankruptcy Court holding that valuation of a debtor's non-income producing residence retained by the debtor under 11 U.S.C. sec. 506(a) should reflect a reduction for the hypothetical costs of sale of that property.

### Factual Context on Appeal

Debtor/Appellee Doris Coby filed a Chapter 13 bankruptcy petition on September 24, 1987. The Internal Revenue Service (hereinafter "IRS") filed a proof of claim for back taxes in the amount of $36,-959.00 secured by a lien on the debtor's residence in North Las Vegas, Nevada. The IRS's claim is secured to the extent of value of the residence minus any encumbrances and unsecured as to the balance.

Coby objected to the claim arguing, *inter alia,* that for purposes of providing for the claim under 11 U.S.C. section 1325(a)(5), the "allowed secured claim" as defined by 11 U.S.C. section 506(a) must be computed by deducting the hypothetical costs of sale of the real property in question. There is no indication that any income is derived or to be derived from the use or occupancy of the home. At the close of bankruptcy, Coby will retain the real property in question as her residence.

After lengthy briefing and argument, the Bankruptcy Court held that the issue of whether a deduction should be made for the hypothetical costs of sale had already been resolved in the Ninth Circuit by the Bankruptcy Appellate Panel in *In re Malody,* 102 B.R. 745 (9th Cir. BAP 1989). Accordingly, the Bankruptcy Court found in favor of Debtor, Doris Coby.

The Bankruptcy Court also held that, pursuant to the stipulation of the parties, a ten percent rate should be imputed for determining the amount of the costs of the hypothetical sale. Both parties now agree that no such stipulation had been made.

### Standard of Review

In reviewing questions of fact, the Bankruptcy Court's findings shall not be set aside unless they are clearly erroneous. *In re Taylor*, 884 F.2d 478, 480 (9th Cir.1989); *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989). Issues of law are reviewed *de novo*. *In re Lockard*, 884 F.2d 1171, 1174 (9th Cir.1989).

In interpreting the standard of review for factual findings, the Supreme Court has held that:

> The [clearly erroneous] standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.
>
> ... If the [lower] court's account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citations omitted).

### Valuation of Debtor's Property Under Section 506(a)

■ Valuation of a security interest in property for the purposes of providing for a claim under 11 U.S.C. section 1325(a)(5) must be computed under 11 U.S.C. section 506(a). The balance of interests to be considered when calculating the "allowed secured claim" under section 506(a) is unclear because of apparent inconsistencies within that section. The issue presented by this appeal focuses specifically on the interplay between the first and second sentences of section 506(a). The first sentence provides that valuation of a security interest should be measured by the value to the lien holder:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a). In other words, it is the creditor's interest and not the collateral itself that is being valued. The value of the creditor's interest will generally reflect a wholesale value or some comparable figure.

The second sentence of section 506(a) specifies that valuation must be calculated according to the disposition of the property:

> Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a). "A determination of value for one purpose is not necessarily determinative of value for another purpose." *In re Crockett*, 3 B.R. 365, 367 (Bankr.N.D.Ill.1980). Where, as here, the debtor will retain the property upon settlement of the bankruptcy estate, some courts have determined that the second sentence suggests that valuation reflect a retail or replacement value figure instead of the wholesale figure clearly contemplated by the first sentence. *See, e.g., In re Case*, 115 B.R. 666 (9th Cir. BAP 1990); *In re Spacek*, 112 B.R. 162 (Bankr.W.D.Tex. 1990); *In re Bellman Farms, Inc.*, 86 B.R. 1016 (Bankr.D.S.D.1988); *In re Courtright*, 57 B.R. 495 (Bankr.D.Ore.1986); *In re Frost*, 47 B.R. 961 (Bankr.D.Kan.1985).

Other courts have determined that a proper reading of the second sentence fo-

cuses the question, *inter alia,* on whether the property helps to effectuate the bankruptcy plan as a whole. *See, e.g., In re Malody,* 102 B.R. 745 (9th Cir. BAP 1989); *In re Smith,* 92 B.R. 287 (Bankr.S.D.Ohio 1988); *In re Boring,* 91 B.R. 791 (Bankr.S.D.Ohio 1988); *In re Claeys,* 81 B.R. 985 (Bankr.D.N.D.1987); *In re Cohen,* 13 B.R. 350 (Bankr.E.D.N.Y.1981); *In re Klein,* 10 B.R. 657 (Bankr.E.D.N.Y.1981). According to these courts, the phrase "proposed disposition or use" in the second sentence should not be read narrowly as just a matter of whether the debtor will retain the property or not. Rather, it should be read in conjunction with the disposition or use's effect on a plan affecting the creditor's interest.

Recently, the Ninth Circuit Bankruptcy Appellate Panel (hereinafter "BAP") held that the wholesale value, not the replacement value, is the appropriate value to be used in determining the extent of security in automobiles retained by debtors under section 506(a). *In re Malody,* 102 B.R. 745, 748–49 (9th Cir. BAP 1989). Central to the Panel's reasoning was that the collateral was only incidental to the completion of the bankruptcy plan. *Id.* at 749. Since the collateral was not necessary to the plan, replacement value was not the most appropriate measure of value: if the debtor had not retained the property at issue, there would have been no allocation for replacement under the plan.

For instance, in *Malody,* the bankruptcy court originally hearing the case noted that alternative forms of transportation exist and that the vehicles "can be replaced by something as mundane as the city bus." *Malody,* 102 B.R. at 749 (quoting the lower court). The Panel inferred that it would have taken a different approach if the collateral at issue was income-producing property necessary for the effectuation of the debtor's plan.

It is an unsettled issue in the Ninth Circuit whether bankruptcy courts such as that in which this case originated are bound by decisions of the BAP. *Bank of Maui v. Estate Analysis, Inc.,* 904 F.2d 470, 471–72 (9th Cir.1990); *In re Johnson,*

117 B.R. 577, 581 n. 5 (Bankr.D.Idaho 1990). Therefore, the bankruptcy court below might have erred in determining that it had to follow "the binding authority of *Malody." In re Coby,* 109 B.R. 963, 965 (Bankr.D.Nev.1990). This Court need not determine whether or not the bankruptcy court was so bound.

In any case, this Court may act independently of the BAP. *Bank of Maui v. Estate Analysis, Inc.,* 904 F.2d 470, 472 (9th Cir.1990). In *Bank of Maui,* the Ninth Circuit held that, as a constitutional matter, BAP decisions cannot bind district courts. "As article III courts, the district courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction." *Id.* Nevertheless, this Court finds that the BAP decision in *In re Malody* is based on firm policy grounds and clear logic, and provides useful guidance in this case.

■ The IRS contends that this Court should follow the line of decisions that question how a liquidation valuation is consistent with the debtor's retaining the property. *See, e.g., In re Case,* 115 B.R. 666 (9th Cir. BAP 1990) (farm); *In re Spacek,* 112 B.R. 162 (Bankr.W.D.Tex.1990) (surface and mineral estates); *In re Bellman Farms, Inc.,* 86 B.R. 1016 (Bankr.D.S.D. 1988) (farm); *In re Courtright,* 57 B.R. 495 (Bankr.D.Ore.1986) (farm); *In re Frost,* 47 B.R. 961 (Bankr.D.Kan.1985) (trash and hauling routes). The key fact not before those courts and not fully accounted for in the government's argument is that the property at issue in those cases produced income and consequently helped to effectuate the bankruptcy plan. Not only are the types of property involved in those cases (farms, trash and hauling routes, and mineral estates) inherently more valuable to the plan than a personal residence, income-producing property, if not retained by the debtor, would have to be replaced or an additional source of income would have to be developed for payments under the plan to be feasible. In that situation, then, calculation of the value of the interests involved under section 506(a) is appropriately measured as the replacement value of the

property. *Accord In re Malody,* 102 B.R. 745 (9th Cir. BAP 1989) (automobile used for personal transportation); *In re Smith,* 92 B.R. 287 (Bankr.S.D.Ohio 1988) (personal residence); *In re Boring,* 91 B.R. 791 (Bankr.S.D.Ohio 1988) (personal residence); *In re Cohen,* 13 B.R. 350 (Bankr.E.D.N.Y. 1981) (personal residence); *In re Klein,* 10 B.R. 657 (Bankr.E.D.N.Y.1981) (automobile used for personal transportation).

In contrast, here, as in *In re Malody,* the property whose valuation is at issue is not income-producing property. Debtor is employed by the gaming industry and does not receive any additional support from activities arising out of her residence. While she is clearly entitled to some form of shelter, as the *Malody* debtors were entitled to some form of transportation, alternatives such as apartment rental are available. Home ownership is not central to the bankruptcy plan. Therefore, if Debtor were not retaining her residence, it is unlikely that the bankruptcy plan would contemplate funds for Debtor to buy a new home.

In this situation, then, the contention that merely because Debtor is retaining her residence the value of the United States' security interest in the residence should reflect a full market value would be manifestly unjust. Instead, the value of the government's lien should be calculated according to the value of that lien to the United States. The value thus calculated should reflect the hypothetical costs of selling the home on the open market.

The Court's holding is consistent with the Congressional intent underlying section 506(a) that the value should be "[d]etermined on a case-by-case basis taking into account the facts of each case and the competing interests in the case." H.R.Rep. No. 595, 95th Cong., First Sess. 356 (1977), *reprinted in* U.S.Code Cong. & Admin. News, 1978 at 5787, 6312.

This Court holds that where a debtor retains property not central to the effectuation of the bankruptcy plan, calculation of the property's value should reflect that reality and be discounted for the hypothetical costs of sale.

### *Calculation of Hypothetical Costs of Sale*

As stated above, this Court must review findings of fact on a "clearly erroneous" standard, *In re Taylor,* 884 F.2d at 480, and conclusions of law *de novo.* *In re Lockard,* 884 F.2d at 1174. Both the IRS and Debtor agree that the Bankruptcy Court erred in its assumption that the parties had stipulated that if the hypothetical costs of sale were to be deducted, that ten percent is an appropriate rate to use in determining the costs of sale. In light of the apparent absence of any such stipulation, this Court finds that the Bankruptcy Court erred as a matter of law in failing to make a factual determination of the hypothetical costs of sale of Debtor's residence. Accordingly, the Court will remand this case for a determination of the hypothetical costs of sale.

### ORDER

IT IS THEREFORE ORDERED that the Judgment of the Bankruptcy Court is affirmed in part and reversed in part. The case is remanded to the Bankruptcy Court for factual findings as to the hypothetical costs of sale.