**In re Elray RASH and wife Jean Rash, Debtors.**

**Bankruptcy No. 92–10305.**

United States Bankruptcy Court,
E.D. Texas,
Beaumont Division.

Jan. 11, 1993.

Robert E. Barron, P.C., Nederland, TX, for debtors.

Ben L. Aderholt, Hirsch, Glover, Robinson & Sheiness, P.C., Houston, TX, for Associates Commercial Corp.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Comes now before this Court the Motion of Associates Commercial Corporation for Relief from Stay and the Objection of Debtors, Elray and Jean Rash to Allowance of Claim of Associates Commercial Corporation pursuant to regular setting in Beaumont, Texas. This opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052 and disposes of all issues before the Court.

## FACTUAL BACKGROUND

Elray Rash and wife Jean Rash, hereinafter referred to as ("Debtor"), filed for relief under Chapter 13 of the Code on March 18, 1992. Debtor is the owner and operator of a 1989 T–600A Kenworth Tractor-trailer truck, hereinafter referred to as ("truck"), which is used in Debtor's business of hauling freight. The majority of Debtor's income stems directly from his ability to operate this truck.

Debtor's interest in the truck is subject to the security interest of Associates Commercial Corporation, hereinafter ("Associates"), in the amount of $41,171.01, as reflected by Associates' proof of claim. Associates claims it is fully secured. Debtor has filed an objection to Associates' claim on the basis that the value of the truck is significantly lower and therefore Associates is undersecured. In addition, Associates has filed a Motion Requesting Relief from the Automatic Stay alleging, inter alia, lack of insurance coverage, insufficient maintenance and a denial of adequate protection. The matters were consolidated for hearing.

At the regularly scheduled hearing the parties presented evidence to the Court concerning the truck's value. Associates

maintains that the truck should be valued according to its retail value i.e. what the Debtor would be required to pay to replace it. Debtor disagrees, arguing that the appropriate standard of valuation should be the wholesale value of the truck i.e. what the truck is worth to a dealer. The testimony indicates that based on the industry "bluebook" of truck values the truck has a wholesale value of $31,875.00 and a retail value of $42,500.00. The outcome of this issue will decide how Associates' claim is treated in Debtor's plan.

The question presented to the Court by the parties is whether the appropriate standard of valuation of a vehicle in Chapter 13 is the retail or the wholesale value? The matter was taken under advisement pending further review.

## DISCUSSION OF LAW

### STATUTORY AUTHORITY AND LEGISLATIVE HISTORY

Statutory authority and legislative history provide very little guidance in valuation matters. The full range of a court's directives in valuation questions is contained in § 506(a) of the Code:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C.A. § 506(a) (West 1979 and Supp. 1992). The Congressional intent in enacting § 506(a) was not to dictate how valuation was to be conducted but to leave the development of valuation standards to the discretion of the courts:

> "Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6312. Armed with this discretion and basing their holdings on the express terms of § 506(a) buttressed by its legislative history, courts have succeeded in developing two major irreconcilable approaches to valuation questions.

### RETAIL VALUE VS. WHOLESALE VALUE

The parties presented this case to the Court as a choice between the "bluebook" wholesale or retail value. A review of the jurisprudence indicates that the overwhelming majority of all cases which discuss the valuation of automobiles also couches the discussion in a choice between the wholesale and retail value as set out in the "bluebook" which is an accepted industry standard. While this Court recognizes the ease of administration and the simplicity of preparation engendered by the simple reference to a book of values such an approach seems to circumvent the Court's duty to determine the specific case before it. This Court has a philosophical problem with the application of an industry average to a specific case in the absence of proof that the case before it is truly the average case. In the instant case, the parties equated retail value with the value that the hypothetical reasonable customer would pay for this vehicle at the hypothetical reasonable truck dealer's location. Conversely, they equated wholesale value to the price that the hypothetical reasonable truck dealer would pay the hypothetical reasonable seller for the truck prior to placing it on his lot for resale. Although this Court is certainly not convinced that an adherence to the bluebook retail or wholesale value for automobiles, mobile homes or any other type of personalty can be equated to the value of listed stock on a major stock

exchange, the realities of the situation are that the marketplace is so accustomed to using these publications as guidelines that the courts must also use them. Accordingly, the remainder of this opinion will discuss the determination of value in the context of retail vs wholesale. The primary reason for this Court's willingness to accept that designation and that procedure for analysis is the Court's perception that wholesale value most often equates to the value in the hands of the creditor after he has deducted his foreclosure and disposition costs so that it is a reasonable indication of the net proceeds he will receive upon the disposition of the reclaimed collateral. Correspondingly, the retail value approximates the price the debtor would have to pay to purchase a like vehicle on the open market.

Associates argues that Debtor should be required to pay the retail value of the truck in the context of a Chapter 13 plan. Proponents justify the use of retail value for three reasons. First, retail value reflects actual replacement cost to a debtor. Second, the use of retail value in a Chapter 13 case (as opposed to a Chapter 7 case) is reflective of the increased benefit derived by a debtor's retention of the collateral. Third, adjusting the value of the property to reflect potential disposition costs incurred by the creditor is inconsistent with the debtor's retention of the property. Accordingly, in cases of retention, retail as opposed to wholesale value should be the relevant standard. However, the courts advocating the use of retail value are clearly in the minority position among courts which have considered this issue. *See In re Reynolds*, 17 B.R. 489, 493 (Bankr. N.D.Ga.1981).

For his part, Debtor urges this Court to assign a value to the truck using its wholesale value. Advocates of the use of wholesale value in the context of valuing a creditor's collateral for purpose of Chapter 13 plan payment argue that § 506(a) envisions the valuation process from the perspective of the value of the collateral to the creditor. *In re Mitchell*, 954 F.2d 557, 560 (9th Cir.1992). Unless a creditor is in the business of selling collateral of a particular type on a retail basis such creditor will most likely be required to sell the goods wholesale. Accordingly, the wholesale value reflects the maximum amount that a creditor would realize as a result of its secured claim and hence is "the value of such creditor's interest." *See* § 506(a); *Mitchell, supra; Johnson v. General Motors Acceptance Corp.*, 115 B.R. 515, 516 (Bankr.D.S.C.1988); *In re Malody*, 102 B.R. 745, 750 (9th Cir.BAP 1989); *In re Cook*, 38 B.R. 870, 873 (Bankr.D.Utah 1984); *Matter of Van Nort*, 9 B.R. 218, 221 (Bankr.E.D.Mich.1981); *Matter of Crockett*, 3 B.R. 365, 367 (Bankr.N.D.Ill.1980); *In re Adams*, 2 B.R. 313 (Bankr.M.D.Fla. 1980). For the most part, these courts dismiss as irrelevant to this analysis, the recognition that Chapter 13 envisions the retention of the collateral.

Of course, the resort to retail or wholesale approaches to valuation is not exclusive. Some court's split the difference between retail and wholesale value as the only equitable approach to an intractable dilemma. *In re Chapman*, 135 B.R. 11, 14 (Bankr.M.D.Pa.1990); *In re Miller*, 4 B.R. 392, 393 (Bankr.S.D.Cal.1980). At least one court has held that a creditor is entitled to the value of an automobile equivalent to what that creditor would receive pursuant to a preexisting repurchase agreement with a dealer. *In re Stumbo*, 7 B.R. 939, 940 (Bankr.D.Colo.1981). However, it is also apparent that this position has been almost uniformly rejected. *In re Beranek*, 9 B.R. 864, 866 (Bankr.D.Colo.1981); *Matter of Cooper*, 7 B.R. 537, 539 (Bankr.N.D.Ga. 1980); 3 *Collier on Bankruptcy*, para. 506.04 at 506–35 (15th ed. 1989). Finally, some courts, in dicta, have suggested that collateral which is income-producing or necessary to a plan's success should be given a premium value to reflect these attributes. *Mitchell* at 560; *In re Malody*, 102 B.R. 745, 749 (9th Cir.BAP 1989) (Use of automobile for production of income is merely incidental; not necessary for effective reorganization); *In re Coby*, 126 B.R. 593, 595 (D.Nev.1991) (income-producing property should be valued according to replacement cost); *In re Johnson*, 117 B.R. 577, 580–581 (Bankr.D.Idaho 1990).

After due consideration, the Court finds that the decisions embracing the use of wholesale value to be better reasoned and in accord with the Code. The Court is influenced in its decision by its belief that the proper administration of the entire bankruptcy system requires' a proper classification of claims into secured and unsecured status. The scheme of the Bankruptcy Code, continued from prior law, is to balance the equities of all parties involved and recognize that secured creditors, by virtue of their security, have a vested interest in the estate. Economic reality dictates that no matter what Congress or the courts decree a secured creditor will only recover the intrinsic value of the security upon its disposition when he is forced to take the security in lieu of payment. To the extent that the collateral does not have intrinsic value which can be recognized in the marketplace, the creditor is simply unsecured and no amount of legislative or judicial fiat can change that position. Section 506(a) plainly allows a creditor secured status "to the extent of the value of such creditor's interest in the estate's interest in [specific] property." By its very terms, § 506(a) focuses on value from the creditor's perspective. How is that value determined? This question can be answered simply: By the amount the creditor will realize on the collateral's disposition.

Unless a creditor is positioned, upon repossession of a debtor's collateral, to sell the collateral at retail, the amount of money likely realizable by the creditor will reflect the collateral's wholesale value. As acknowledged in *In re Malody*, 102 B.R. 745, 749 (9th Cir.BAP 1989), assigning retail value to collateral "ignores the inherent risk which [creditor] undertook when it made these loans—the risk that if the debtors 'defaulted [creditor] might have to repossess the vehicles and sell them at values most likely less than their retail values." *Accord In re Claeys*, 81 B.R. 985, 992 (Bankr.D.N.D.1987) ("... when the issue is the value of a secured creditor's interest in collateral, real or personal, one must uniformly take into account the anticipated costs of disposal.")

Should the fact that this Debtor proposes to retain the truck in Chapter 13 affect the truck's value? The Court concludes that it should not. There is a great deal of disagreement over the interpretation of the second sentence in § 506(a): "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property ..." A review of the jurisprudence indicates that no clear majority position has developed on this divisive issue. The intrinsic value to a prospective purchaser of specific use property [1] will remain the same whether it is in the hands of a debtor or a creditor; nothing in the Bankruptcy Code can change this reality. However, the first sentence of § 506(a) focuses on quantifying the value of a creditor's interest in property. For the reasons previously stated, the value of the creditor's interest is measured by what the creditor would receive on account of such property upon disposition following repossession or foreclosure. The value of this interest is not changed by the debtor's retention of the property because from the creditor's perspective, his net result, in the event of future repossession or foreclosure, will be the same.

In this case, the truck is being valued for the purposes of Associates Motion to Lift Stay and Debtor's Objection to Associates' Proof of Claim. Debtor's proposed use of the Truck is also undisputed. Debtor intends to use the truck for its intended purpose—hauling freight. The truck is not susceptible to multi-use such that should affect its value. Accordingly, there is no justification for valuing Associates' interest in the truck by any standard other than its wholesale value.

Should the value of the truck be affected by the acknowledgment that Debtor uses it to produce income? In several cases involving passenger automobiles, creditors have argued that retail value should apply since the use of the automobile is tied to debtor's employment and ability to successfully complete the plan. Without fail the courts which have considered this argu-

---

1. It is clear that further analysis might be necessary if we were dealing with property susceptible to different uses such as real estate used in an agricultural operation but suitable for development. That consideration is not present here and the Court is not called upon to deal with it.

ment have rejected it on the grounds that the use of an automobile to transport a debtor to and from work is merely incidental to the production of income and/or alternatively that the use of an automobile is not necessary to the success of a debtor's plan. *Malody* at 749; *Johnson* at 580–581; *Cook* at 875 n. 11. This distinction has also been raised in the context of valuing real estate. *In re Coby*, 126 B.R. 593, 595–596 (D.Nev.1991). While not disagreeing with the results in these cases the Court questions the logic of this approach.

 As previously stated, value is defined from the creditor's perspective: How much would the creditor realize upon repossession and disposition of the collateral which the debtor proposes to retain? Accordingly, it is not enough that the property is income-producing in the hands of the debtor, the creditor must demonstrate that the income-producing attributes of the property stem directly from an inherent characteristic of the property itself rather than just from debtor's use of the property.[2] In such a situation the income producing characteristic of the property would be recognized in a higher value the creditor could receive on disposition. In this case, the truck alone has no income producing attributes if the debtor does not act as its driver. In the hands of Associates the truck is just a truck.

Associates is in the business of financing trucks. While it is clear that from time to time Associates is required to repossess trucks on which there are loan defaults there is no evidence indicating how Associates disposes of the trucks upon repossession or foreclosure. In the absence of such evidence, in accordance with the reasons set forth in this opinion, the Court finds that Debtor has demonstrated that Associates' secured interest in the truck is re-

flected by its wholesale value[3] of $31,875.00.

 Furthermore, even though Debtor does not have equity in the truck, Debtor has demonstrated the necessity of the truck for his reorganization and that such reorganization is in prospect. 11 U.S.C.A. § 362. Additionally, Associates' claim that its interest in the truck is not being adequately protected is not demonstrated by the evidence. The truck is insured and maintained. The Debtor is current in his payments to the Chapter 13 Trustee. No cause exists to lift the stay. Associates Motion to Lift the Automatic Stay is DENIED.

---

2. In a similar vein, the Court declines to follow the suggestion in *Mitchell* that the value of collateral should be adjusted upward if its use in the debtor's hands is particularly detrimental to its value. 954 F.2d at 560. Detrimental use is a risk factor which can be negated through the payment of a higher interest rate through the plan and/or a shortening of the plan term to comport with the collateral's useful life.

3. All parties relying on this opinion should understand that the Court makes this finding only because it equates wholesale value with the value the creditor would receive upon disposition of the property after deducting foreclosure and disposition costs. The Court does not find the rubric of "wholesale" or "retail" value recited in an industry standard reference book to be of any intrinsic value if specific evidence shows a different set of circumstances.