**In re Frank J. TIBERIA and Julie F. Tiberia, Debtors.**

**Bankruptcy No. 98–20866.**

United States Bankruptcy Court,
W.D. New York.

Nov. 13, 1998.

Stewart E. McDivitt, Montour Falls, NY, for debtors.

Douglas J. Lustig, Saperston & Day, P.C., Rochester, NY, Chapter 7 Trustee.

### DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On March 11, 1998, Julie F. Tiberia ("Julie Tiberia") and Frank J. Tiberia (collectively, the "Debtors") filed a petition initiating a Chapter 7 case. On their schedules and statements, required to be filed by Section 521 and Rule 1007, the Debtors indicated that: (1) they owned wedding rings with a market value of $2,000, which they were claiming as exempt property, pursuant to Section 5205 of the New York Civil Practice Law and Rules (the "CPLR");[1] (2) their combined annual gross income was in excess of $63,000; (3) their unsecured claims for credit card purchases, lines of credit and dischargeable student loans were in excess of $30,000.

An April 24, 1998 Minute Report of the Section 341 Hearing (the "341 Hearing") conducted by the Debtor's trustee (the "Trustee"), indicated that he was investigating: (1) the appropriateness of a Section 707(b) substantial abuse motion, because it appeared to him that the Debtors' reported monthly expenses, which included $800 for food and lunches for the Debtors and their one-year old daughter, seemed excessive; and (2) the allowability of the Debtors' claimed exemption for an engagement ring.

1. New York is an "opt-out" state as allowed by Section 522(b)(1). Therefore, the Debtors can only claim the exemptions allowed by the New York Debtor & Creditor Law, which includes those available under CPLR Section 5205.

On May 19, 1998, the Trustee filed an objection to the Debtors' claim of an exemption for their wedding rings.

On September 18, 1998, the Trustee filed a motion (the "Exemption Motion") that requested an order: (1) compelling Julie Tiberia to deliver to him, as Trustee, her diamond engagement ring; and (2) disallowing her claim of an exemption for the engagement ring.

In the Exemption Motion and an accompanying Memorandum of Law, the Trustee alleged that: (1) at the Section 341 Hearing, the Debtors testified that the wedding rings they scheduled and claimed as exempt included Julie Tiberia's "Engagement Ring", which was subsequently appraised at the Trustee's request as having a value of $3,250, and described by the appraiser as, "diamond ring—one brilliant cut diamond ring, .77 carats, set in 18K yellow gold mounting with six prong head with eight diamonds weighing .25 carats set on side. Total weight of diamonds is 1.00 carats;" (2) the Debtors' only claim of an exemption for the Engagement Ring was pursuant to CPLR Section 5205(a)(6), which specifically provided an exemption for a wedding ring;[2] (3) Webster's Dictionary defined wedding ring as "a ring often of plain gold or platinum given by the groom to the bride during the wedding service; *also:* a similar ring given by the bride to the groom in a double-ring service[.]"[3]; and (4) the Engagement Ring was not a wedding ring within the meaning and intent of CPLR Section 5205(a)(6), and therefore, was not exempt and should be turned over to the Trustee as property of the estate.

On October 22, 1998, the Debtor interposed a response to the Exemption Motion which urged the Court to determine that a diamond engagement ring becomes a wedding ring once the wedding ceremony takes place, because that is the common understanding of married couples.

At the October 30, 1998 return date of the Exemption Motion, the Debtors did not dispute that the Engagement Ring was given to Julie Tiberia prior to their wedding ceremony, and that during their wedding ceremony she received an additional ring as a part of the ceremony.[4]

## DISCUSSION

### A. Statutes and Case Law

Although CPLR Section 5205 has been amended eight times since it became effective on September 1, 1963,[5] there has been no amendment to the exemption set forth at Section 5205(a)(6) for "a wedding ring." There have been modifications to clarify the meaning of the exemptions, but the substance of the exemptions has remained the same as the earlier statute, The Civil Practice Act (the "CPA"), which was enacted in the 1920's.

The term "wedding ring" is not defined in the CPLR, and there is no legislative history to the CPLR or the CPA which further explains the meaning of this term.

Counsel for both the Debtors and the Trustee have advised the Court that they were unable to find a single published case where a New York State Court or a Federal Court, interpreting New York law, had been asked to determine whether a ring, other than a ring given or used exclusively during a wedding ceremony, was a wedding ring

---

**2.** Section 5205(a)(6) sets forth *personal property exempt from application to the satisfaction of money judgments,* as follows:

(a) Exemption for personal property. The following personal property when owned by any person is exempt from application to the satisfaction of a money judgment except where the judgment is for the purchase price of the exempt property or was recovered by a domestic, laboring person or mechanic for work performed by the person in such capacity:

(6) A wedding ring; a watch not exceeding thirty-five dollars in value;

**3.** *Webster's New World Dictionary Second College Edition* (1986), page 1611.

**4.** At the hearing on the Exemption Motion, the Court was reminded by a friend of the Court of the scene in the movie "The Miracle on 34th Street" when the Judge's advisor asked him if he really wanted to be known as the Judge who ruled that there was no Santa Claus.

**5.** CPLR Section 5205 was amended in 1976, 1977, 1978, 1987, 1989, 1993, 1994 and 1995.

within the meaning and intent of CPLR Section 5205(a)(6).[6]

The legislatures of a number of other states have enacted exemption statutes that specifically differentiate between wedding and engagement rings, but which allow an individual to claim an exemption for wedding rings and other rings, in some cases depending upon their value, by exempting: (1) all engagement and wedding rings not in excess of an aggregate fair market value of one thousand dollars (Arizona); (2) watches, jewelry and articles of adornment of the debtor and each dependant to the extent of five hundred dollars in value (Colorado); (3) the debtor's interest in any wedding or engagement ring owned and received by the debtor or the debtor's dependants on or before the date of the marriage (Iowa); (4) heirlooms or other items of particular sentimental value to the individual (Utah); and (5) any wedding or engagement rings worn by either spouse, provided the value of the ring does not exceed five thousand dollars (Louisiana).[7]

## B. *History of Engagement Rings*

In the 15th Century in Europe, when a couple agreed to be married, they often exchanged Betrothal (Engagement) Gifts. Although the Betrothal Gift might·be a special item, such as a watch, bracelet or necklace, it was often a ring. If the Betrothal Gift was a ring, often it was also used during the wedding ceremony, and no additional ring was given during the ceremony. However, at other times, an additional wedding ring was given during the wedding ceremony, especially among royalty. If the Betrothal Gift was other than a ring, the recipient would generally receive a wedding ring during the wedding ceremony. Therefore, it was, and still is, possible for a ring given prior to marriage as a Betrothal or Engagement Ring to become a wedding ring when it is utilized as the wedding ring during the wedding ceremony and no additional ring is given.

In some cultures and religions, wedding rings cannot contain diamonds or other gemstones. In the Jewish faith, for example, the rings exchanged during the wedding ceremony must be a band of metal that cannot contain any jewels.

In 1477, Archduke Maximillan of Austria gave Mary of Burgandy a diamond ring to mark their betrothal, and so began the custom common today. Then, in the early 1900's in the United States, Tiffany & Co. began aggressively promoting the custom of giving a diamond engagement ring to a woman when there was an agreement to marry. Today, in the United States, a woman who has received an engagement ring, often a diamond engagement ring, but sometimes a ring with semi-precious stones or even an heirloom, generally receives an additional ring, a wedding ring, during the wedding ceremony. However, in some cases, the engagement ring is the only ring used during the wedding ceremony, and it becomes the wedding ring.

## C. *General*

■■■ A ring which meets the Webster Dictionary definition of a wedding ring, a ring that is given to an individual during and as a part of their wedding ceremony, will always be exempt as a wedding ring for purposes of CPLR Section 5205(a)(6). In addition, a ring, whether it was considered to be an Engagement or Betrothal Ring when given before the wedding ceremony, but which is used during the wedding ceremony when no other ring is received, becomes the wedding ring, and will also be exempt for purposes of CPLR Section 5205(a)(6). An Engagement Ring, given and received in contemplation of marriage, when a different ring

---

6. In *In re Buchferer*, 216 B.R. 332, 335 (Bankr. E.D.N.Y.1997), Bankruptcy Judge Stan Bernstein, *in dicta*, stated that "under Chapter 7, all of their assets, with the exception of Mrs. Buchferer's diamond engagement ring, valued at $10,400, would be exempt from liquidation by the Trustee"; and in *In re Cohen*, 13 B.R. 350, 356 (Bankr.E.D.N.Y.1981), Bankruptcy Judge Cecelia H. Goetz, *in dicta*, stated that "the hearing in this proceeding has disclosed numerous assets not

covered by her exemptions ... Her engagement ring may also be an asset for purposes of Chapter 13."

7. The existence of statutes such as the Arizona, Iowa and Louisiana statutes indicate that there is a common sense distinction between a wedding ring and an engagement ring.

is given and received during the marriage ceremony, remains an Engagement Ring even after the marriage ceremony.[8]

### CONCLUSION

Julie Tiberia's Engagement Ring is not a wedding ring which is exempt under CPLR Section 5205(a)(6), and, therefore, it must be turned over to the Trustee within ten days of the entry of this Order, unless arrangements satisfactory to the Trustee are made for the payment of its value to the bankruptcy estate.

**IT IS SO ORDERED.**

---

8. Perhaps the New York State Legislature will revisit Section 5205(a)(6) in light of this Decision & Order and the exemption statutes enacted by other states which appear to have visited or revisited this issue.